SARINA SALUJA, SBN 253781
E-Mail: ssaluja@fisherphillips.com
FISHER & PHILLIPS LLP
444 South Flower Street, Suite 1500
Los Angeles, California 90071
Telephone: (213) 330-4500
Facsimile: (213) 330-4501

Attorneys for Plaintiff Fidelity Brokerage Services LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

FIDELITY BROKERAGE SERVICES LLC,

Plaintiff,

v.

JAMES BURI and MORGAN STANLEY SMITH BARNEY LLC,

Defendants.

Case No: 8:18-cv-02246-JVS-ADS

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FIDELITY'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

*[Submitted with Notice and Application of TRO, Declarations of Stephen Jennings, Gerard Kinzel and Sarina Saluja, and [Proposed] Order]*

Complaint Filed: December 19, 2018
Trial Date: None Set

# TABLE OF CONTENTS


Page

INTRODUCTION .......................................... **Error! Bookmark not defined.**

STATEMENT OF FACTS .......................................... 2

LEGAL ARGUMENT .......................................... 2

I. THE STANDARDS FOR GRANTING TEMPORARY INJUNCTIVE RELIEF STRONGLY FAVOR GRANTING FIDELITY RELIEF..........3

II. FIDELITY HAS A STRONG LIKELIHOOD OF SUCCESS ON THE MERITS. ..........................................4

A. Defendants Misappropriated Fidelity's Trade Secret Customer Information..........................................4

B. Defendants Have Violated the CUTSA and DTSA..........................8

1. Fidelity's Client Information Is A Trade Secret....................8

2. Defendants Misappropriated Fidelity's Trade Secrets. ...... 11

3. Information in Memory is Protectable as a Trade Secrets. 14

C. Buri Breached The Employment Agreement. ............................. 18

III. FIDELITY IS SUFFERING IRREPARABLE HARM AS A RESULT OF DEFENDANTS' WRONGFUL AND ONGOING ACTS.............. 19

IV. THE EQUITIES AND THE PUBLIC INTEREST STRONGLY FAVOR GRANTING THE REQUESTED INJUNCTIVE RELIEF.................... 21

A. The Balance Of Equities Tips Strongly In Favor Of Fidelity. ...... 21

B. The Public Interest Will Be Served By Granting Injunctive Relief .......................................... 22

V. A INJUNCTION WILL MAINTAIN THE *STATUS QUO* PENDING ARBITRATION. .......................................... 22

VI. THIS COURT MAY ENTER INJUNCTIVE RELIEF EVEN THOUGH THE MERITS WILL BE DECIDED IN ARBITRATION. .................... 23

VII. THERE IS NO NEED FOR A BOND. .......................................... 24

CONCLUSION .......................................... 25

TABLE OF AUTHORITIESs

**Cases** **Page(s)**

*Al Minor & Assoc. v. Martin*,
881 N.E.2d 851 (Ohio 2008) ..... 17

*Allen v. Johar, Inc.*,
308 Ark. 45 (1992) ..... 17

*Allied North America Ins. Brokerage Corp. of Cal. v. Woodruff-Sawyer*,
2005 U.S. Dist. Lexis 47388 (N.D. Cal. 2005) ..... 14

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
559 F.3d 1046 (9th Cir. 2009) ..... 4

*American Credit Indem. Co. v. Sacks*,
213 Cal. App.3d 622 (1989) ..... 17

*AMN Healthcare, Inc. v. AYA Healthcare Services, Inc.*,
28 Cal. App.5th 923, 239 Cal. Rptr. 3d 577 (2018) ..... 4, 5, 6

*Bank of Am., N.A. v. Immel*,
No. C 10-02483 CRB, 2010 WL 2380877 (N.D. Cal. June 11, 2010) ..... 20, 23

*Bank of Am., N.A. v. Lee*,
2008 WL 4351348 (C.D. Cal. Sept. 22, 2008) ..... 23

*Blumenthal v. Merrill Lynch*,
910 F.2d 1049 (2d Cir. 1990) ..... 23

*Cent. Plastics Co. v. Goodson*,
1975 Okla. 71 (1975) ..... 18

*Charles Schwab & Co. v. Karpiak*,
2006 U.S. Dist. LEXIS 92763 (E.D. Pa. 2006) ..... 10

*Corporate Express Doc. and Print Mgmt., Inc. v. Coons*,
2000 U.S. Dist. Lexis 22243 (C.D. Cal. 2000) ..... 13

*Courtesy Temp. Serv., Inc. v. Camacho*,
222 Cal.App.3d 1278 (1990) ..... 7, 15

*Deck v. Wells Fargo Bank, N.A.*,
2017 WL 659945 (E.D. Cal. Feb. 13, 2017) .......... 3

*Diamond Power Int'l v. Clyde Bergemann, Inc.*,
2005 U.S. Dist. LEXIS 12493 (N.D. Ga. Jan. 5, 2005) .......... 18

*Ed Nowogroski Ins., Inc. v. Rucker*,
137 Wash.2d 427 (1999) .......... 17

*Fidelity Brokerage Services, LLC v. Wilder*
*2012 WL 4481995 (Sept. 21, 2012)* .......... 11

*Fidelity Brokerage Servs. LLC v. McNamara*,
No. 11 CV 1092 MMA RBB, 2011 WL 2117546 (S.D. Cal. May 27, 2011) .......... *passim*

*Fidelity Brokerage Servs. LLC v. Nordstrom*,
Case No. 17-0594 (Dkt. 26 at *2) (E.D. Cal. Mar. 30, 2017) .......... 2, 3, 19

*Fidelity Brokerage Servs. LLC v. Rocine*,
Case No. 17-4993-PJH (N.D. Cal. Sept. 7, 2017) .......... 3, 15

*Fidelity v. Wilder*,
2012 WL 4481995 (Sept. 21, 2012) .......... 20

*Fidelity Brokerage Services, LLC v. Wilder*,
FINRA Case No. 11-3937 .......... 11

*Gable-Leigh, Inc. v. N. Am. Miss*,
2001 WL 521695 (C.D. Cal. Apr. 13, 2001) .......... 12

*Gable-Leigh, Inc. v. North American Miss*,
2001 U.S. Dist. LEXIS 25614 (C.D. Cal. 2001) .......... 17

*Gallagher Benefit Servs., Inc. v. De La Torre*,
2008 WL 2512489 (9th Cir. 2008) .......... 20

*Greenly v. Cooper*,
77 Cal.App.3d 382 (1978) .......... 15

*Corp. Tech., Inc. v. Harnett*,
2013 WL 1891308 at *8 .......... 20

*Henry Schein, Inc. v. Cook*,
191 F. Supp. 3d 1072, 1079 (N.D. Cal. 2016), ............................................*passim*

*IDS Life Ins. Co. v. Smithson*,
843 F. Supp. 415 (N.D. Ill. 1994) ..................................................................10

*IDS Life Ins. Co. v. Sun America*,
958 F. Supp. 1258 (N.D. Ill. 1997), *aff'd in part, vac. in part*, 136 F.3d 537 (7th Cir. 1998)..........................................................................10

*Jet Spray Cooler, Inc. v. Crampton*,
361 Mass. 835 (1972)........................................................................................18

*Jorgensen v. Cassiday*,
320 F.3d 906 (9th Cir. 2003)............................................................................24

*Klamath-Orleans Lumber, Inc. v. Miller*,
87 Cal.App.3d 458 (1978)................................................................................15

*M.N. Dannenbaum, Inc. v. Brummershop*,
840 S.W. 2d (Tex. App. 1992) .........................................................................17

*MAI Sys. Corp. v. Peak Computer, Inc.*,
991 F.2d 511 (9th Cir. 1993)..............................................................................9

*McLaughlin, Piven, Vogel Securities Inc. v. Arias*,
No. C-95-690-SBA (N.D. Cal. April 10, 1995) ................................................14

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chung*,
No. 01-659, 2001 WL 283083 (C.D. Cal. Feb. 2, 2001)...........................3, 9, 12, 22

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Garcia*,
127 F. Supp. 2d 1305 (C.D. Cal. 2000)..............................................................3

*Merrill Lynch v. Bradley*,
756 F.2d (4th Cir. 1985)...............................................................................20, 23

*Merrill Lynch v. Chapman*,
1998 WL 792501 (N.D. Tex. 1998) .................................................................10

*Merrill Lynch v. Chung*,
2001 U.S. Dist. Lexis 3248 (C.D. Cal. 2001) ...................................................14

*Merrill Lynch v. Cross*,
1998 WL 122780 (N.D. Ill. 1998) .......... 10

*Merrill Lynch v. Davis*,
1998 WL 920328 (N.D. Tex. 1998) .......... 10

*Merrill Lynch v. Dutton*,
844 F.2d 726 (10th Cir. 1988) .......... 21, 24

*Merrill Lynch v. Hagerty*,
808 F. Supp. 1555 (S.D. Fla. 1992), *aff'd*, 2 F.3d 405 (11th Cir. 1993) .......... 24

*Merrill Lynch v. Kramer*,
816 F. Supp. 1242 (N.D. Ohio 1992) .......... 22

*Merrill Lynch v. Patinkin*,
1991 WL 83163 (N.D. Ill. May 9, 1991) .......... 21

*Merrill Lynch v. Ran*,
67 F. Supp.2d 764 (E.D. Mich. 1999) .......... 10

*Merrill Lynch v. Salvano*,
999 F.2d 211 (7th Cir. 1993) .......... 20, 23

*Merrill Lynch v. Stidham*,
658 F.2d 1098 (5th Cir. 1981) .......... 20

*Merrill Lynch v. Wright*,
1993 WL 13036199 (N.D. Tex. 1993) .......... 17

*Morlife, Inc. v. Perry*,
56 Cal. App. 4th 1514 (1997) .......... *passim*

*Moss, Adams & Co. v. Shilling*,
179 Cal.App.3d 124 (1986) .......... 16

*Orbach v. Merrill Lynch*,
1994 WL 900431 (E.D. Mich. 1994) .......... 10

*Ortho Pharm. Corp. v. Amgen Inc.*,
887 F.2d 460 (3d Cir. 1989) .......... 23

*Peabody Coalsales Co. v. Tampa Elec. Co.*,
36 F.3d 46 (8th Cir. 1994) .......... 24

*Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373 (6th Cir. 1995) ........ 24

*PMS Distrib. Co. v. Huber & Suhner, A.G.*, 863 F.2d 639 (9th Cir. 1988) ........ 24

*Pyro Spectaculars N.*, Inc. v. Souza, 861 F. Supp. 2d at 1090-91 ........ 8, 22, 23, 24

*Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004) ........ 11

*Rego Displays, Inc. v. Fournier*, 119 R.I. 469 (1977) ........ 18

*The Retirement Group v. James Galante, et al.*, 176 Cal.App.4th 1226 (2009) ........ 12

*Reusch v. Reusch Int'l*, 479 A.2d 297 (D.C. App. 1984) ........ 18

*Ruscitto v. Merrill Lynch*, 777 F. Supp. 1349, *aff'd*, 948 F.2d 1286 (5th Cir. 1991) ........ 24

*Silicon Image, Inc. v. Analogix Semiconductor*, 642 F. Supp. 2d 957 (N.D. Cal. 2008) ........ 18

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832 (9th Cir. 2001) ........ 20

*Teradyne Inc. v. Mostek Corp.*, 797 F.2d 43 (1st Cir. 1986) ........ 23

*Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire of N. Am., Inc.*, 609 F.3d 975 (9th Cir. 2010) ........ 3

*Velo-Bind v. Scheck*, 485 F. Supp. 102 (S.D.N.Y. 1979) ........ 18

*Walczak v. EPL Prolong, Inc.*, 198 F.3d 725 (9th Cir. 1999) ........ 24

*Whitted v. Williams*, 226 Cal.App.2d 52 (1964) ........ 15

*Wyndham Resort Dev. Corp. v. Bingham*,
No. 2:10-CV-01556, 2010 WL 2740158 (E.D. Cal. July 9, 2010) .......... 3

**Statutes**

18 U.S.C.A. § 1836(b)(3) .......... 8

15 U.S.C. § 6801(a) (2012) .......... 8

18 U.S.C. § 1836(b)(3)(A) .......... 3

18 U.S.C. § 1839(3) .......... 8

18 U.S.C. § 1839(5) .......... 11

Cal. Bus. & Prof. Code § 16600 .......... 4, 5

Cal. Bus. & Prof. Code § 16699, and (b) .......... 5

Cal. Civ. Code § 3426(d) .......... 16

Cal. Civ. Code § 3426.1(b) .......... 11

Cal. Civ. Code § 3426.1(d) .......... 8

Cal. Civ. Code § 3426.1 *et seq.* .......... 16

Cal. Civ. Code, § 3426.2 .......... 8

Cal. Civ. Code § 3426.2(a) .......... 3

California Uniform Trade Secrets Act .......... 2

Defend Trade Secrets Act of 2016 .......... 2

Gramm-Leach-Bliley Act .......... 8

§ 2(d) of the Illinois Trade Secrets Act, ILCS 1065/2(d) .......... 10

Michigan’s Uniform Trade Secrets Act .......... 10

Uniform Trade Secrets Act .......... 10, 16

**Other Authorities**

17 C.F.R. § 248.3(t)(1) .......... 8

17 C.F.R. § 248.3(u)(1) .......... 8

17 C.F.R. § 248.3(u)(2)(i)(D) .......... 8

17 C.F.R. § 248.10 .......... 8

Fed. R. Civ. P. 65 .......... 1

Federal Rule of Civil Procedure 65(c) .......... 24

FINRA Rule 13200 .......... 1

FINRA Rule 13804 .......... 1, 24

Rule 13804(a)(2) .......... 1

# INTRODUCTION

Plaintiff Fidelity Brokerage Services LLC ("Fidelity") respectfully moves this Court for a Temporary Restraining Order ("TRO") and thereafter a Preliminary Injunction against Defendants James Buri ("Buri") and Morgan Stanley Smith Barney LLC ("Morgan Stanley") pursuant to Fed. R. Civ. P. 65 and Civil L.R. 65-1. Injunctive relief is necessary to prevent irreparable harm to Fidelity and to maintain the *status quo* pending a FINRA arbitration.

This case arises from the misappropriation and misuse of trade secrets and unfair competition engaged in against Fidelity by one of its former employees, Financial Consultant, Buri, and his new employer, Morgan Stanley. As described in more detail below and in Fidelity's supporting materials, Buri resigned from Fidelity without prior notice on November 30, 2018, and joined Morgan Stanley that same day. Buri immediately began soliciting Fidelity's clients on behalf of Morgan Stanley using Fidelity's trade secrets and other confidential customer information. Despite Fidelity's efforts to resolve this matter without resorting to litigation, Buri, with the aid and encouragement of Morgan Stanley, has refused to stop soliciting Fidelity's clients through the use of Fidelity's trade secret customer information.

The parties are subject to an agreement to arbitrate pursuant to the arbitration rules and regulations of the Financial Industry Regulatory Authority ("FINRA"). *See* FINRA Rule 13200. Accordingly, concurrent with filing this Motion for a Temporary Restraining Order and Preliminary Injunction ("Motion"), Fidelity has filed a Statement of Claim with FINRA Dispute Resolution, Inc. seeking binding arbitration of this dispute pursuant to Rule 13804(a)(2). Although the merits of this case will be resolved in an arbitration before FINRA, pursuant to FINRA Rule 13804, Fidelity is required to seek and obtain immediate injunctive relief in a court of competent jurisdiction before an expedited FINRA arbitration may proceed. If this Court issues an injunction, FINRA will schedule an expedited arbitration hearing within fifteen (15) days of entry of the injunction. If no injunction is issued, however, FINRA cannot hear this case on an

expedited basis and, instead, must assign it to a standard-track arbitration, which could delay a hearing on the merits for a year or more. Immediate injunctive relief is therefore needed to preserve the *status quo* while the parties proceed to expedited arbitration.

**STATEMENT OF FACTS**

In an effort to conserve space and avoid burdening the Court with duplicative information, Fidelity refers the Court to the Affidavits and Complaint filed with this Motion and accompanying Memorandum of Law.

**LEGAL ARGUMENT**

Fidelity is entitled to an injunction under both the California Uniform Trade Secrets Act ("CUTSA") the Defend Trade Secrets Act of 2016 ("DTSA"), as well as under common law for breach of contract. Defendants improperly, and without regard to the rights of Fidelity and its customers, used and continue to use Fidelity's trade secret customer information to target, solicit, and attempt to divert Fidelity's customers to Morgan Stanley. Fidelity will be irreparably harmed if its investment in the development, maintenance and confidentiality of it trade secrets are not protected. Fidelity is separately entitled to an injunction because Buri is breaching his Employee Agreement with Fidelity. Accordingly, Fidelity seeks a narrowly-tailored injunction enjoining Defendants from using or disclosing Fidelity's trade secrets to unfairly compete with Fidelity.

Courts in California routinely enjoin employees from using their former employers' trade secret customer information, including especially by prohibiting them from using their knowledge of such trade secret information to facilitate solicitation of customers. *See, e.g., Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1079 (N.D. Cal. 2016); *Fidelity Brokerage Servs. LLC v. Nordstrom*, Case No. 17-0594 (Dkt. 26 at *2) (E.D. Cal. Mar. 30, 2017) (granting Fidelity's Motion for an *ex parte* TRO to protect *inter alia* customer information); *Fidelity Brokerage Servs. LLC v. McNamara*, No. 11 CV 1092 MMA RBB, 2011 WL 2117546, at *3 (S.D. Cal. May 27, 2011) (same). Indeed, both CUTSA and DTSA expressly provide that a court may grant injunctive

relief for either the actual or threatened misappropriation of trade secrets. 18 U.S.C. § 1836(b)(3)(A); Cal. Civ. Code § 3426.2(a).

Fidelity vigorously protects its confidential and trade secret information, including through multiple injunction actions brought in California in the last few years alone. Fidelity and others have consistently sought and obtained injunctive relief to protect confidential and trade secret information in numerous similar cases, including those granted by the United States District Courts for the Central, Southern and Eastern Districts of California. *See, e.g., Fidelity Brokerage Servs. LLC v. Rocine*, Case No. 17-4993-PJH (N.D. Cal. Sept. 7, 2017); *Fidelity v. Nordstrom, supra*;; *Henry Schein, Inc.*, 191 F. Supp. 3d at 1079; *Fidelity v. McNamara*, 2011 WL 2117546, at *3 (; *Wyndham Resort Dev. Corp. v. Bingham*, No. 2:10-CV-01556, 2010 WL 2740158 at *4-8 (E.D. Cal. July 9, 2010); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chung*, No. 01-659, 2001 WL 283083 at *4 (C.D. Cal. Feb. 2, 2001); and *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Garcia*, 127 F. Supp. 2d 1305, 13056 (C.D. Cal. 2000). As in those cases, a Temporary Restraining Order should be issued here to prevent the ongoing solicitation of Fidelity's trade secret customer information.

## I. THE STANDARDS FOR GRANTING TEMPORARY INJUNCTIVE RELIEF STRONGLY FAVOR GRANTING FIDELITY'S INJUNCTION.

"The purpose of a temporary restraining order is to preserve the status quo pending the complete briefing and thorough consideration contemplated by full proceedings pursuant to a preliminary injunction." *Deck v. Wells Fargo Bank, N.A.*, 2017 WL 659945, at *1 (E.D. Cal. Feb. 13, 2017) (citation omitted). The standard for issuing a temporary restraining order is the same as the standard for issuing a preliminary injunction. *Id.* at *2. The Ninth Circuit has recognized the propriety of granting injunctive relief in aid of arbitration. *See, e.g., Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire of N. Am., Inc.*, 609 F.3d 975, 980 (9th Cir. 2010) ("[T]he congressional desire to enforce arbitration agreements would frequently be frustrated if the courts were precluded from issuing preliminary injunctive relief to preserve the

status quo pending arbitration and, *ipso facto*, the meaningfulness of the arbitration process.") (internal quotations and citations omitted).

Fidelity is entitled to injunctive relief because it can demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to Fidelity in the absence of injunctive relief; (3) that the balance of the equities tips in its favor; and (4) that an injunction is in the public interest. *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

## II. FIDELITY HAS A STRONG LIKELIHOOD OF SUCCESS ON THE MERITS.

### A. Defendants Misappropriated Fidelity's Trade Secret Customer Information.

Fidelity is likely to succeed on its claims for misappropriation because Defendants have wrongfully misappropriated Fidelity's trade secret customer information by misusing it to solicit Fidelity's customers.

Based on allegations from defense counsel prior to litigation, Fidelity expects Defendants will argue that there has been a recent change in the law that somehow insulates them from culpability for misusing Fidelity's trade secret information based on the decision in *AMN Healthcare, Inc. v. AYA Healthcare Services, Inc.*, 28 Cal. App.5th 923, 239 Cal. Rptr. 3d 577 (2018). Any such reliance is misplaced, however, because the *AMN* case (a) focused on enforceability of a covenant not to recruit AMN's traveling nurse employees, and (b) involved former AMN employees whose sole occupation was to be recruiters of traveling nurses. As such, the Court of Appeals found that the covenant was unenforceable under Cal. Bus. & Prof. Code § 16600 because it operated to preclude these recruiters from engaging in their profession: recruiting. The Court of Appeals also found that AMN's list of traveling nurses was not a trade secret. The facts of the present case are virtually the opposite. Indeed, while denying injunctive relief under the circumstances of that case, the *AMN* decision actually reaffirms the legal basis for Fidelity's right to immediate injunctive relief and

confirms that the circumstances here are exactly the type of misappropriation of trade secret information that warrants injunctive relief.

In *AMN*, the Court of Appeals had to assess whether injunctive relief should be granted to enjoin an employee of a staffing company from soliciting and recruiting traveling nurses based on a contract provision in her employment agreement with her former employer that prohibited such solicitation. *Id.* The court held that injunctive relief was not warranted because (a) the contract provision was unenforceable under Cal. Bus. & Prof. Code § 16699, and (b) the information relating to the traveling nurses was not a trade secret, and thus *under those facts* solicitation did not amount to misappropriation because there was no trade secret information used by the former employee to contact and solicit the nurses. *Id.*

Importantly, in rendering its decision, the Court of Appeals in *AMN* reaffirmed the proper analysis to be applied when determining whether injunctive relief is warranted based on misappropriation of trade secrets. The Court of Appeals stated:

> A cause of action for misappropriation of trade secrets requires a plaintiff to show the plaintiff owned the trade secret; at the time of misappropriation, the information was a trade secret; the defendant improperly acquired, used, or disclosed the trade secret; the plaintiff was harmed; and the defendant's acquisition, use, or disclosure of the trade secret was a substantial factor in causing the plaintiff harm.

28 Cal. App. 5th at 943, 239 Cal. Rptr. 3d at 593. However, the Court of Appeals in *AMN* concluded that the information at issue was not a trade secret because: 1) the employee's new employer already had the identities and contact information for the nurses and, in fact, they were in its database; and 2) the travel nurses belonged to a public social media group called the "Gypsy Nurse Group" so their names and contact information were publicly available and anyone had access to them. *Id.* at 943-944, 239 Cal. Rptr. 3d at 594-595. Finally, the Court of Appeals concluded that because the

employee non-solicitation clause was being applied to a recruiter, the limitation on solicitation prevented the recruiter from engaging in their "profession, trade, or business," essentially turning it into a noncompetition agreement. *Id.*

In sharp contrast to the information regarding the temporary traveling nurses at issue in *AMN*, Fidelity's customer list is not in the possession of its competitors, including Defendant Morgan Stanley. Morgan Stanley would have no way of knowing who Fidelity's customers were, or how to contact them, had Buri not been given access to that information only through his work at Fidelity and solely as a result of being assigned to service those clients on Fidelity's behalf. Fidelity's customer information is not contained in Morgan Stanley's databases, just like Morgan Stanley's clients are not accessible to Fidelity. Only by inducing an employee of a securities firm to take and misuse that information, would a competitor have access to it.

In further contrast to the facts in *AMN*, information regarding Fidelity's customers is in no way publicly available or openly accessible on any type of social media or public site. To be clear, Fidelity customer names might exist generally on the internet or in phone books, but they are in no public place identified as customers of Fidelity – members of the public with assets available to invest, who have a need and a demonstrated interest in paying for the types of services Fidelity offers. It is the fact that Fidelity has taken the time and gone to the great expense of culling individuals from the general public to find those investors who have substantial assets to invest, who want the services of an investment advisor, and who are willing to pay for those services, that make them a trade secret. *See, e.g.*, Courtesy Temp. Serv., Inc. v. Camacho, 222 Cal.App.3d 1278 (1990) (finding customer list was a protectable trade secret, and holding that it is the "list of persons who actually purchase [the plaintiff's] services that constitute confidential information."). As the testimony from Fidelity's witnesses indicates, even among the thousands of Fidelity customers who have retirement accounts with Fidelity, not all of them are interested in further investment services. Fidelity has had to find those investing members from its own enormous ranks

of customers who have investable assets and an interest in obtaining and paying for advice. This is much different than the publicly available information for the nurses in *AMN* who specifically identified themselves on the social media site as nurses who were looking for part time work and were willing to travel. Courts in California routinely enjoin employees from using the type of trade secret customer information that Fidelity is seeking to protect, and this has in no way changed based on *AMN*. Also vastly different in this case, Buri was not a recruiter but instead provides financial services and is fully able to continue his chosen profession and even provide financial services to Fidelity customers. Buri is merely prohibited from going beyond announcing his new contact information, and from soliciting the business of Fidelity customers who he is only aware of through his prior employment with Fidelity.

**B. Defendants Have Violated the CUTSA and the DTSA**

Under both the DTSA and CUTSA, the Court can enjoin actual or threatened misappropriation of trade secrets. 18 U.S.C.A. § 1836(b)(3); Cal. Civ. Code. § 3426.2. Trade secrets are defined by the DTSA as information that:

> (1) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (2) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3). CUTSA defines trade secrets similarly. *See* Cal. Civ. Code. § 3426.1(d).

**1. Fidelity's Client Information Is A Trade Secret.**

Fidelity's customer data qualifies as a trade secret under both the DTSA and CUTSA because the confidentiality of the data gives Fidelity an economic advantage over its competitors. California courts recognize that customer information can be found to "have economic value because its disclosure would allow a competitor to direct its sales efforts to those customers who have already shown a willingness to use

a unique type of service or product as opposed to a list of people who only might be interested."[1] *Pyro Spectaculars N., Inc.*, 861 F. Supp. 2d at 1090-91(N.D. Cal. 2012) (finding customer information was a trade secret where plaintiff required its employees to sign confidentiality agreements and use password-protected computers, and limited the availability of data based on geographic region and job description); *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1522 (1997) ("where the employer has expended time and effort identifying customers with particular needs or characteristics, courts will prohibit former employees from using this information to capture a share of the market."); *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) (customer information such as sales history and customer needs and preferences constitutes trade secrets); *Henry Schein, Inc.*, 191 F. Supp. 3d at 1077 (customer information constituted trade secrets under both DTSA and CUTSA); *Chung*, 2001 WL 283083, at *4 (finding requirement of signing agreements prohibiting use or disclosure of customer information to be reasonable protection of a trade secret).

Fidelity's customer information falls squarely within this definition. Fidelity has spent millions of dollars to gather and protect its confidential customer information. In order to ensure that Fidelity's valuable customer information remains confidential, Fidelity, among other things, (a) password-protects all computers containing customer information, (b) limits which employees have access to the passwords, (c) enforces a

---

[1] Fidelity's customer information, including the identity of Fidelity customers, is also required to be kept confidential under the Gramm-Leach-Bliley Act and its implementing regulations. The statute declares, "[i]t is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801(a) (2012). The implementing regulation, known as Privacy of Consumer Financial Information (Regulation S-P), prohibits the disclosure of so-called "nonpublic personal information" to non-affiliated third parties without consent. 17 C.F.R. § 248.10. "Nonpublic personal information" is defined to include customer lists from financial institutions, *even if those lists contain only names of Fidelity customers* because the identity of an individual as being a customer of a particular financial institution is specifically protected by the federal regulations. 17 C.F.R. § 248.3(t)(1); 17 C.F.R. § 248.3(u)(2)(i)(D). Indeed, these regulations also protect a customer's account information. 17 C.F.R. § 248.3(t)(1); 17 C.F.R. § 248.3(u)(1).

Global Policy on Information Protection limiting use and access to customer information, (d) reminds its employees periodically of the confidential and proprietary nature of its business information, and (e) enters into nondisclosure agreements with employees. Jennings Decl., ¶¶ 10-12; Kinzel Decl., ¶¶ 7-11.

The value of Fidelity's customer information is underscored by the fact that Buri immediately used the information in his new role at Morgan Stanley, and has continued using the information to unfairly compete with Fidelity. Permitting a competitor like Morgan Stanley unfettered access to this information would give it a significant, unfair advantage over Fidelity in that the competitor can exploit and enjoy the value of the information without having expended the necessary time and investment to compile the information.

Indeed, courts through the United States applying virtually identical Uniform Trade Secrets Act standards repeatedly have found that securities firms' customer lists and customer information are entitled to trade secret status. *See e.g., Charles Schwab & Co. v. Karpiak*, 2006 U.S. Dist. LEXIS 92763, at *29-31 (E.D. Pa. 2006) ("Schwab has shown far more than a reasonable probability of success on the merits" of its claim that its customer list is a trade secret"); *Merrill Lynch v. Ran*, 67 F. Supp.2d 764, 775 (E.D. Mich. 1999) ("Merrill Lynch is entitled to trade secret protection under Michigan's Uniform Trade Secrets Act"); *Merrill Lynch v. Davis*, 1998 WL 920328 at * 1 (N.D. Tex. 1998) ("This court has routinely held that Merrill Lynch's customer lists qualify as trade secrets."); *Merrill Lynch v. Chapman*, 1998 WL 792501 at * 3 (N.D. Tex. 1998) (same); *Merrill Lynch v. Cross*, 1998 WL 122780 at *2 (N.D. Ill. 1998) ("Customer lists are entitled to trade secret protection under Illinois law."); *IDS Life Ins. Co. v. Sun America*, 958 F. Supp. 1258, 1279-80 (N.D. Ill. 1997) ("In this case, plaintiffs claim that Defendants are in possession of plaintiffs' records of customer names, addresses, and investment characteristics and are using that information to solicit and serve plaintiffs' customers. We find that plaintiffs' customer lists and files are likely to constitute trade secrets."), *aff'd in part, vac. in part*, 136 F.3d 537 (7th Cir.

1998); *IDS Life Ins. Co. v. Smithson*, 843 F. Supp. 415, 418 (N.D. Ill. 1994) ("Additionally, § 2(d) of the Illinois Trade Secrets Act, ILCS 1065/2(d), protects IDS's interest in the confidential information such as customer identity, addresses, and financial data . . . An injunction is therefore appropriate to protect IDS's proprietary interest in these trade secrets and to prevent the secrets from being disclosed to competitors or unjustly used by Smithson for his own benefit."); *Orbach v. Merrill Lynch*, 1994 WL 900431 at *6 (E.D. Mich. 1994) (applying Restatement law and holding that "[t]he Michigan Court of Appeals . . . has held that Merrill Lynch's client list is the property of Merrill Lynch . . . [Merrill Lynch] has a strong likelihood of success on the merits of this claim.").

Like the array of other securities firms, Fidelity's customer information has consistently been found to be a protectable trade secret. *See, e.g., Fidelity Brokerage Services, LLC v. Wilder*, FINRA Case No. 11-3937 (Ruling that Fidelity's customer list qualified as a trade secret, based on the FINRA arbitration panel's finding that Fidelity's confidential customer information gave it an advantage over its competition, and that Fidelity obtained and secured the information through expending significant resources, and took stringent measure to guard the secrecy of that information.); *Fidelity v. McNamara*, 2011 WL 2117546, *5 (finding that Fidelity's customer list is a protectable trade secret under California law). To be sure, Fidelity vigorously protects its confidential and trade secret information. Since 2003, Fidelity has sought and obtained injunctive relief to protect its confidential and trade secret information in numerous similar cases, including the injunctions granted by the Courts in California cited above.

**2. Defendants Misappropriated Fidelity's Trade Secrets.**

The DTSA defines "misappropriation" as *inter alia*:

> [D]isclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy of the trade secret or

> limit the use of the trade secret . . . or derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret[.]

18 U.S.C. § 1839(5). CUTSA's definition is similar Cal. Civ. Code § 3426.1(b).

Under California law, "[a] violation of the UTSA occurs when an individual misappropriates a former employer's protected trade secret client list, for example, by using the list to solicit clients . . . ." *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1155 (2004); *see also Henry Schein, Inc.*, 191 F. Supp. 3d at 1079-80(enjoining defendant under the DTSA from using customer list to solicit clients at new employer). The law is clear that "misappropriation occurs if information from a customer database is used to solicit customers." *Chung*, 2001 WL 283083, at *4; *see Gable-Leigh, Inc. v. N. Am. Miss*, 2001 WL 521695, at *20 (C.D. Cal. Apr. 13, 2001) (enjoining use of protected customer list). Under prevailing precedent, even if a departing employee might be permitted to announce or notify clients of his move to a new company, he "may not ask the clients for their business or otherwise solicit them to transfer their accounts[.]" *Fidelity v. McNamara*, 2011 WL 2117546, at *3.

Courts may also enjoin a former employee from using trade secret information to, inter alia, identify existing customers. *The Retirement Group v. James Galante, et al.*, 176 Cal.App.4th 1226 (2009). These well-established principles apply here with particular force where the customer information taken by Buri has clearly enabled him "to solicit both more selectively and more effectively" clients that he was only able to "identify" as having investable assets through his employment with Fidelity. *Morlife*, 56 Cal.App.4th 1514 (finding that the customer list at issue was a trade secret) (*citing Klamath-Orleans Lumber, Inc. v. Miller*, 87 Cal.App.3d 458, 464 (1978)).

In this case, Buri went well beyond merely calling to announce and provide customers with his new contact information and instead unabashedly solicited Fidelity clients to follow him to Morgan Stanley.

Indeed, Buri's mass mailing to Fidelity's customers leaves no room for dispute

that he aggressively solicited customers to move their accounts to Morgan Stanley. In his solicitation letter, which was provided to Fidelity by one of its customers, Buri said he was "extremely pleased" to announce that he had joined Morgan Stanley, but then went much further by declaring in his letter that:

- Morgan Stanley is "one of the leaders in the financial services industry"
- He had determined "after careful consideration" that he could "most effectively assist [client] in meeting your investment goals and objectives through Morgan Stanley."
- "Morgan Stanley is committed to providing investors with the finest financial advice, products and services."
- "Working together we will be able to draw upon the firm's vast network of knowledgeable professionals to help us map out your individual investment strategy."
- "As a Morgan Stanley client you will benefit from the resources and support of a global firm."

*See* Kinzel Decl. ¶ 16 & Ex. I. Finally, after extolling the benefits and virtues of Morgan Stanley in his letter to clients, Buri then expressly entreated them to do business with him stating "I appreciate the confidence you have placed in me and look forward to furthering our successful relationship." *Id.* In addition, numerous clients have reported that Buri is calling them and one customer reported that during the call "he was invited to continue working with Buri going forward." Kinzel Decl. ¶ 15.

Customers have also expressed concern that Buri has taken their confidential and trade secret information to another firm without their knowledge or permission. Specifically, a client formerly serviced by Buri contacted the branch manager to report his concerns stating: "I thought you might like to know that my former VPFC has mailed and phoned me from his new position at Morgan Stanley. He must have taken his Fidelity client list/contact information when he left." Kinzel Decl. ¶ 18.

Buri's conduct fits squarely within prohibited solicitations constituting misuse of trade secret information under California law. California courts have been unwavering in holding that inviting and entreating customers to discuss business constitutes

solicitation, and therefore misappropriation. In fact, even inviting a telephone call back can constitute a solicitation. *See Corporate Express Doc. and Print Mgmt., Inc. v. Coons*, 2000 U.S. Dist. Lexis 22243 (C.D. Cal. 2000) (granting injunctive relief on finding that the employee had solicited customers because he "affirmatively [sought] the customers' continued business" by offering services and inviting a telephone call.).

Similarly, in *Allied North America v. Woodruff-Sawyer*, the court entered a preliminary injunction finding that when an announcement "goes on to discuss the new employer's services and invites inquiries, that announcement becomes solicitation." *Allied North America Ins. Brokerage Corp. of Cal. v. Woodruff-Sawyer*, 2005 U.S. Dist. Lexis 47388 at *9 (N.D. Cal. 2005). In that case the court concluded that the employee had solicited customers because when he called to ensure that they had received the announcement, he "invited their questions." *Id.* The court also pointed to the fact that the former employee, as in this case, had discussed his new firm's qualifications during a call with a customer. *Id. See also McLaughlin, Piven, Vogel Securities Inc. v. Arias*, No. C-95-690-SBA (N.D. Cal. April 10, 1995) (an announcement transcends into a solicitation at that point at which a former employee begins "extol[ing] the virtues" of his new employer.).

Likewise, in *Merrill Lynch v. Chung*, 2001 U.S. Dist. Lexis 3248 (C.D. Cal. 2001), the court granted injunctive relief to another securities firm because the former employees had made telephone calls engaging clients about doing business with them. Specifically, the court noted that injunctive relief was appropriate because the former employees had solicited customers "by placing direct and personal follow-up calls to Merrill Lynch customers." *Id.* The court also concluded that the former employees had solicited customers by discussing with customers "the potential transfer of the customers' accounts, the differences between Merrill Lynch and Smith Barney, and, in at least one conversation, why smith Barney is better than Merrill Lynch." *Id.* Based on this evidence, the court found that the former employees had stepped over the line into solicitation. *Id.* As in these cases, Buri's conduct establishes that he has used

Fidelity's trade secret customer information to aggressively and repeatedly solicit Fidelity's customers in order to divert their business to Morgan Stanley.

**3. Information in Memory is Protectable as a Trade Secret.**

Buri may argue that he took Fidelity's customer information in his memory, rather than on paper, and that this somehow negates the trade secret nature of the information. This argument is completely contrary to established California law. Trade secret protection would be rendered meaningless if the law permitted employees to steal and use any trade secret they could commit to memory. Fortunately, that is not the law in California. As the Court of Appeals explained in finding a customer list and related customer information to be a trade secret, "[t]o afford protection to the employer, the information need not be in writing but may be in the employee's memory." *Morlife v.*, 56 Cal.App.4th at 1522. *See also Courtesy Temp. Serv., Inc. v. Camacho*, 222 Cal. App. 3d 1278, 1288 (1990) (trade secret information does not lose its status as a trade secret simply because an employee commits it to memory); *Klamath-Orleans Lumber, Inc. v. Willer*, 87 Cal.App.3d 458, 464 (1978) (granting preliminary injunction against former employees who solicited business based on their memory of former employer's clients); *Whitted v. Williams*, 226 Cal.App.2d 52 (1964) ("A customer list may exist in the memory of the employees as well as in writing); *Greenly v. Cooper*, 77 Cal.App.3d 382, 392 (1978) (same).

Indeed, the United States District Court for the Northern District of California rejected this exact argument by another advisor who likewise left Fidelity and solicited customers to transfer their business to J.P. Morgan, deeming it "disingenuous." Specifically, the Court commented that:

> The court finds it disingenuous, at best, for Rocine to claim that he did not "use" Fidelity's "Confidential Information" to solicit Fidelity's customers because all he did after his departure was put together a list of customers "from memory" and then look up their contact information in JPMorgan's account databases or in publicly-available databases. <u>The</u>

> fact remains that he would not have known whose names to look up had he not first obtained the names during the course of his employment at Fidelity.

*Fidelity v. Rocine* (Exhibit A at page 8) (emphasis added).

In the Court of Appeals decision in *Morlife*, the employer was in the business of inspecting, maintaining, and repairing roofs for commercial property. 56 Cal.App.4th at 1518. The former employee took a collection of customer business cards with him, and contacted his former employer's customers seeking their business for his newly formed company. *Id.* While there was not a physical customer list, the information used was "a compilation of names, addresses, and data derived both from business cards removed from [employer]'s premises, and from [the former employee's] memory." *Id.* at 1521. The Court of Appeals affirmed the trial court's findings that the employer's list constituted a trade secret and the former employee misappropriated those trade secrets. Consequently, the *Morlife* defendant, who had engaged in the same conduct as Buri, was not only enjoined from soliciting or accepting business from his former clients, but was also ordered to cease doing business with those former clients who had been improperly solicited and who had followed him to his new employer. *Id.* at 1537-38. Similarly, in *MAI Systems*, 911 F.2d at 521-22, the Ninth Circuit found that the fact that the defendant-employee never physically took any part of the plaintiff's customer database was irrelevant to a finding that he had misappropriated and misused the employer's customer list under the Uniform Trade Secrets Act when he solicited the customers.

Furthermore, the CUTSA does not distinguish between written and memorized information. The statute does not require a plaintiff to prove actual theft or conversion of physical documents embodying the trade secret information to prove misappropriation. *See* Ca.Civ.Code § 3426.1 *et seq.* To the contrary, the CUTSA defines a "trade secret" to include compilations of information that have certain

characteristics without regard to the form that such information might take.[2]

Moreover, former employees in California can no longer tenably rely on *Moss, Adams & Co. v. Shilling*, 179 Cal.App.3d 124, 126 (1986). The *Morlife* Court explained that the decision in *Moss, Adams* (that a former employee cannot be expected to "wipe clean" his memory) has "no legitimate basis" for its conclusion and "creates an artificial distinction … under the rubric of commercial impracticality in not being able to 'wipe clean'" a former employee's memory. The *Morlife* Court went on to explain that *Moss, Adams* "constitutes an unjustified abandonment of legitimate regulation of competitive activity, and ignores the paramount interest in protecting information meeting the definitional criteria of a trade secret." *Id.* at 1526. *See Also American Credit Indem. Co. v. Sacks*, 213 Cal. App.3d 622, 636 (1989)(criticizing *Moss, Adams* and holding that "the trial court's reliance on *Moss, Adams* was misplaced"); *Gable-Leigh, Inc. v. North American Miss*, 2001 U.S. Dist. LEXIS 25614, *62-64 (C.D. Cal. 2001) (stating that the reasoning of *Moss, Adams* is no longer applicable, "if it ever was," to the trade secret analysis).

Like the courts in California, courts throughout the country have recognized customer lists as trade secrets, concluding that regardless of whether an employee committed the information to memory, the information is equally valuable and the use of it equally damaging. *See, e.g., Al Minor & Assoc. v. Martin*, 881 N.E.2d 851 (Ohio 2008) (information that constitutes a trade secret does not lose its character as a trade secret if it has been memorized; it is the information that is protected, "regardless of the manner, mode, or form in which it is stored – whether on paper, in a computer, in one's memory, or in any other medium."); *Merrill Lynch v. Wright*, 1993 WL 13036199 at *4 (N.D. Tex. 1993) (rejecting the assertion of a "memory rule" argument by two former Merrill Lynch brokers in a very similar case under Texas common law); *M.N.*

---

[2] In fact, two types of information mentioned in the CUTSA as examples of trade secrets include "method" and "technique," which do not imply a requirement of written documents. Cal. Civ. Code § 3426(d).

*Dannenbaum, Inc. v. Brummershop*, 840 S.W. 2d (Tex. App. 1992) (same); *Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wash.2d 427 (1999) ("the distinction between written and memorized information should not be encouraged. The form of the information and the manner in which it is obtained are unimportant; the nature of the relationship and the employee's conduct should be the determinative factors. The distinction places a premium upon good memory and a penalty upon forgetfulness, and it cannot be justified either from a logical or pragmatic point of view.") (*citing* 2 Rudolf Callmann, The Law of Unfair Competition, Trademarks, and Monopolies § 14.31, at 109-10 (4th ed. Supp. 1996)); *Allen v. Johar, Inc.*, 308 Ark. 45 (1992) ("We believe that whether the customer information used was written down or memorized is immaterial, and the proper issue is whether the information is protectable as a trade secret."); *Jet Spray Cooler, Inc. v. Crampton,* 361 Mass. 835 (1972); *Cent. Plastics Co. v. Goodson*, 1975 Okla. 71 (1975); *Rego Displays, Inc. v. Fournier*, 119 R.I. 469 (1977); *Reusch v. Reusch Int'l*, 479 A.2d 297 (D.C. App. 1984) ("Once a customer list is afforded trade secret protection, it is immaterial whether the list was taken or copied or whether it was memorized."); *Velo-Bind v. Scheck*, 485 F. Supp. 102, 102 (S.D.N.Y. 1979) ("Actual physical copying is not essential to establish an unlawful appropriation of trade secrets…"); *Diamond Power Int'l v. Clyde Bergemann, Inc.*, 2005 U.S. Dist. LEXIS 12493 (N.D. Ga. Jan. 5, 2005) (trade secrets are not transmogrified into non-secrets simply because they are conveyed from a disloyal former employee's memory rather than from some other source). Consistent with the vast amount of case law both in California and across the country, while Buri is not required to wipe his memory clean, his use of that information amounts to unlawful misappropriation of Fidelity's trade secrets.

**C. Buri Breached The Employment Agreement.**

For the same reasons articulated above, Fidelity has a strong likelihood of success on its breach of contract claim. To prevail on its claim for breach of contract, Fidelity need only establish (1) the existence of a contract, (2) its performance or excuse

for nonperformance, (3) Buri's breach, and (4) resulting harm to Fidelity. *Silicon Image, Inc. v. Analogix Semiconductor*, 642 F. Supp. 2d 957, 964 (N.D. Cal. 2008). Here, pursuant to the Employee Agreement that Buri signed as a condition of his initial and continuing employment, compensation, training, and access to Fidelity's trade secret customer information, Buri agreed that he would not "copy, reproduce, use, disclose, or discuss in any manner . . . [Fidelity's] Confidential Information [(including its customer lists and customer information)]" outside of his Fidelity employment, and that he would not "retain any copies, notes, or excerpts of Confidential Information upon termination of [his] employment." Kinzel Decl. ¶ 11 & Exs. D-H at ¶¶ 1, 3. Buri also agreed that he would not, for one year following his separation from Fidelity, use Fidelity's confidential information to "directly or indirectly, on [his] own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer or prospective customer of [Fidelity] to divert . . . [business away from Fidelity]." *Id.*, Exs. D-H at ¶ 6. By using Fidelity's confidential customer lists and information to attempt to divert Fidelity's customers to Morgan Stanley, Buri has breached his Employment Agreement and caused harm to Fidelity. Accordingly, Fidelity is likely to succeed on its breach of contract claim.

## III. FIDELITY IS SUFFERING IRREPARABLE HARM AS A RESULT OF DEFENDANTS' WRONGFUL AND ONGOING ACTS.

Defendants' misconduct has irreparably harmed Fidelity and will continue to irreparably Fidelity if not stopped immediately. *See Fidelity v. Nordstrom*, Case No. 17-0594 (Dkt. 26 at *2) (E.D. Cal. Mar. 30, 2017) (granting Fidelity's Motion for TRO and finding "Fidelity will suffer irreparable harm if Defendants are permitted to continue to misappropriate Fidelity's trade secret customer information and use that information to continue to solicit Fidelity's customers").

By misusing Fidelity's confidential customer information – which includes highly sensitive, personally identifying information that is protected by federal financial regulatory law – Defendants' conduct has caused or threatens to cause

Fidelity's clients to lose trust in Fidelity's ability to secure their privacy. Jennings Decl., ¶¶ 16-17; Kinzel Decl., ¶ 20. Indeed, Fidelity customers expect that their confidential information, such as their contact information, net worth, risk tolerances, investment goals, and preferences, will be protected and not misused by departing employees. *Id.* Thus, customers become (understandably) concerned when former Fidelity employees, such as Buri, take their information and use it to solicit their business on behalf of a competitor. *Id.*

In *Fidelity v. McNamara*, the U.S. District Court for the Southern District of California concluded that "[i]rreparable harm may be found, where as here, Defendants' alleged actions may injure Fidelity's reputation if Fidelity's clients perceive a violation of their confidential information." 2011 WL 2117546, at *6; *see also Bank of Am., N.A. v. Immel*, No. C 10-02483 CRB, 2010 WL 2380877, at *3 (N.D. Cal. June 11, 2010) ("The Court concludes that Plaintiff has shown a significant threat of irreparable harm if their client information is not returned. If Defendants' conduct continues, Plaintiff will suffer harm to its reputation if it is perceived to have violated or allowed the violation of its clients' confidential contact information."); *Gallagher Benefit Servs., Inc. v. De La Torre*, 2008 WL 2512489, at *2 (9th Cir. 2008) ("declaration as to the goodwill and customers that [plaintiff] would lose absent equitable relief supports [the district court's] finding of irreparable injury"); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of possible irreparable harm."). An injunction is required to prevent Fidelity customers from losing confidence in Fidelity's ability to adequately protect their personal financial information.

In addition to the irreparable loss of customer confidence, the injury to Fidelity is incalculable. As the *Fidelity v. Wilder* opinion explained: "It is impossible to predict the loss of business, trade secrets, and goodwill which this breach may trigger. One can never anticipate the future assets which might be owned by these very successful and wealthy families who are lost to Fidelity due to [the former employee's] conduct."

*Fidelity v. Wilder*, 2012 WL 4481995 (Sept. 21, 2012), Exhibit B hereto at 4. *See also Corp. Tech., Inc. v. Harnett*, 2013 WL 1891308 at *8 (D. Mass. May 3, 2013); *Merrill Lynch v. Stidham*, 658 F.2d 1098, 1102 n.8 (5th Cir. 1981) ("Were defendants permitted by the law to exploit the clientele of their former employers, every investment that reasonably flowed from the exploitation should be included in the damages award. How such a figure could be arrived at escapes us."); Merrill Lynch v. Bradley, 756 F.2d at 1055 (4th Cir. 1985) (Merrill Lynch "faced irreparable non-compensable harm in the loss of its customers"); Merrill Lynch v. Salvano, 999 F.2d 211 (7th Cir. 1993) ("the available evidence--indicating that [the advisors] took various documents and information pertaining to Merrill Lynch's clients and used that information to solicit Merrill Lynch customers--sufficiently supports the court's determinations regarding irreparable harm and the inadequacy of Merrill Lynch's legal remedy."); Merrill Lynch v. Dutton, 844 F.2d 726 (10th Cir. 1988) (affirming finding of irreparable harm). Denial of injunctive relief would also leave Fidelity "vulnerable to the same conduct from other employees." *Merrill Lynch v. Patinkin*, 1991 WL 83163, *6 (N.D. Ill. May 9, 1991).

When (as is the case here) there is compelling evidence that a former employee is in possession of customer information and soliciting his former employer's customers in violation of the DTSA and California law, California courts enjoin threatened future solicitation. *See, e.g., Henry Schein, Inc.* 191 F. Supp.3d at 1079-80 (enjoining defendant from "directly or indirectly, soliciting, continuing to solicit, initiating contact with, or accepting business from, any [of plaintiff's] customers whose accounts were assigned to her while she was employed by [plaintiff].").

Defendants' conduct has irreparably harmed and will continue to irreparably harm Fidelity if not immediately stopped. *Id.*, ¶¶ 28-29. Faced with Defendants' continuing use of its information to solicit Fidelity's customers, and the resultant irreparable harm caused to Fidelity, Fidelity is left with no alternative but to seek immediate redress from this Court and ultimately from a FINRA arbitration panel.

## IV. THE EQUITIES AND THE PUBLIC INTEREST STRONGLY FAVOR GRANTING THE REQUESTED INJUNCTIVE RELIEF.

### A. The Balance Of Equities Tips Strongly In Favor Of Fidelity.

The benefit of injunctive relief to Fidelity far outweighs any detriment to Defendants, and serves the public interest. An injunction would protect Fidelity's valuable trade secrets, goodwill, business reputation, methods of business operation, and contract rights. The reasoning of the court in *Merrill Lynch v. Chung* is directly applicable to the present case:

> [T]he balance of hardships tips heavily in favor of granting injunctive relief because an injunction merely prohibits Defendants from misappropriating the trade secrets of [the plaintiff], and requires them to comply with the reasonable terms of their Agreements. An injunction will not prevent the Defendants from continuing their employment in the securities industry, will not interfere with their ability to acquire even a fairly limited number of clients of the thousands of potential clients in the area, or from working for [the new brokerage firm] in the community in which Defendants have chosen to work.

2001 WL 283083, at *6; *see also Pyro Spectaculars*, 861 F. Supp. 2d at 1092 ("[A]ny injunction issued would be focused on preventing defendant from unlawfully using PSI's trade secrets to solicit PSI's customers. Such an order would not cause any significant hardship to defendant, because it would essentially only require him to abide by existing law regarding the unauthorized use of another's trade secrets.").

### B. The Public Interest Will Be Served By Granting Injunctive Relief.

The public interest will be served by granting Fidelity's Motion because, without the requested injunctive relief, individuals such as Buri will be free to misappropriate and misuse their former employers' trade secrets with impunity, and competing brokerage institutions will continue to recruit Fidelity employees who can share and competitively exploit Fidelity's confidential customer information, thereby shortcutting the time, effort and expense invested by Fidelity to build its clientele. *See Merrill Lynch v. Kramer*, 816 F. Supp. 1242, 1248 (N.D. Ohio 1992) ("To deny injunctive relief in this case would . . . jeopardize the integrity of the securities industry to the detriment of

the public interest [and] . . . would cast doubt on the integrity of contractual agreements."). "On the one hand, California has a 'settled legislative policy in favor of open competition and employee mobility' . . . On the other hand, the state also has a strong policy in favor of protecting trade secrets." *Pyro Spectaculars*, 861 F. Supp. 2d at 1092 (citations omitted). In short, the requested relief will not negatively impact the public's interest in competition, and will protect Fidelity's trade secrets. *See Pyro Spectaculars*, 861 F. Supp. 2d at 1093 ("[F]ind[ing] that an injunction specifically focused on preventing misuse of PSI's trade secrets to solicit PSI's customers would serve the policy of protecting trade secrets while simultaneously allowing lawful competition."); *see also Immel*, 2010 WL 2380877, at *3 (California's strong public policy in favor of competition *yields* to California's interest in protecting a company's trade secrets); *Bank of Am., N.A. v. Lee*, 2008 WL 4351348, at *7 (C.D. Cal. Sept. 22, 2008) (same).

## V. AN INJUNCTION WILL MAINTAIN THE *STATUS QUO* PENDING ARBITRATION.

A temporary restraining order is appropriate to preserve the *status quo* that existed as of the last peaceable act – immediately prior to the misappropriation and misuse of Fidelity's trade secrets and solicitation of Fidelity's customers. To preserve that *status quo*, a temporary restraining order should require Defendants to return all Fidelity data and to refrain from further solicitation of Fidelity customers for whom Buri misappropriated or misused trade secret information.

An order enjoining Defendants from further misappropriating Fidelity's trade secret customer information and prohibiting solicitation of Fidelity customers would return the parties to the *status quo* without any undue prejudice to Buri's ability to earn a living. *See, e.g.*, *McNamara*, 2011 WL 2117546 at *5; *Pyro Spectaculars*, 861 F. Supp. 2d at 1090-91; *see also Morlife*, 56 Cal. App. 4th at 1528 ("In view of the clearly established violation of the UTSA, the injunction correctly draws the line, and leaves

Burlingame free to solicit customers whose identities are not the trade secrets of Morlife.")

**VI. THIS COURT MAY ENTER INJUNCTIVE RELIEF EVEN THOUGH THE MERITS WILL BE DECIDED IN ARBITRATION.**

Even where, as here, arbitration ultimately will be required, Fidelity is entitled to injunctive relief from this Court pending FINRA arbitration. *See Salvano*, 999 F.2d at 214 (7th Cir. 1993); *Teradyne Inc. v. Mostek Corp.*, 797 F.2d 43 (1st Cir. 1986); *Blumenthal v. Merrill Lynch*, 910 F.2d 1049 (2d Cir. 1990); *Ortho Pharm. Corp. v. Amgen Inc.*, 887 F.2d 460 (3d Cir. 1989); *Merrill Lynch v. Bradley*, 756 F.2d at 1053-54 (4th Cir. 1985); *Ruscitto v. Merrill Lynch*, 777 F. Supp. 1349, *aff'd*, 948 F.2d 1286 (5th Cir. 1991); *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373 (6th Cir. 1995); *Peabody Coalsales Co. v. Tampa Elec. Co.*, 36 F.3d 46 (8th Cir. 1994); *PMS Distrib. Co. v. Huber & Suhner, A.G.*, 863 F.2d 639 (9th Cir. 1988); *Merrill Lynch v. Dutton*, 844 F.2d 726 (10th Cir. 1988); *Merrill Lynch v. Hagerty*, 808 F. Supp. 1555, 1561 (S.D. Fla. 1992), *aff'd*, 2 F.3d 405 (11th Cir. 1993) (per curiam).

In fact, under FINRA Rule 13804, Fidelity is ***required*** to seek and obtain immediate injunctive relief in a court of competent jurisdiction before an expedited FINRA arbitration is permitted to proceed. Thus, Fidelity's election to seek immediate injunctive relief from both FINRA and this Court is not only appropriate and consistent with its arbitration agreement, but is required under the FINRA Code of Arbitration Procedure, pursuant to which all parties have agreed to arbitrate the ultimate merits of this dispute.

**VII. THERE IS NO NEED FOR A BOND.**

Although a bond is called for under Federal Rule of Civil Procedure 65(c), the district court has wide discretion as to the amount. *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 733 (9th Cir. 1999). In fact, "[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003); *see Pyro Spectaculars*, 861 F. Supp. 2d at 1098 (same); *McNamara*, 2011 WL 2117546, at *8 (citing *Jorgensen*) (declining to issue bond requested by defendants).

Here, Fidelity has demonstrated an overwhelming likelihood of success on its claims and has made a clear showing of ongoing and irreparable harm. The requested injunctive relief will not impede or prevent Defendants from conducting business. Rather, the requested injunctive relief will narrowly enjoin Defendants from continuing to unlawfully solicit Fidelity's customers and from retaining Fidelity's confidential and trade secret customer information. Accordingly, Fidelity respectfully requests that the Court either dispense with the bond requirement or, at most, require a nominal bond.

**CONCLUSION**

For all the foregoing reasons, Fidelity respectfully requests that the Court grant Fidelity's motion and issue the requested injunctive relief in accordance with the Proposed Order submitted concurrently herewith.

Dated: December 19, 2018

Respectfully submitted,

FISHER & PHILLIPS LLP

By: */s/ Sarina Saluja*
SARINA SALUJA
Attorneys for Plaintiff
Plaintiff Fidelity Brokerage Services LLC