SARINA SALUJA, SBN 253781
E-Mail  ssaluja@fisherphillips.com
FISHER & PHILLIPS LLP
444 South Flower Street, Suite 1500
Los Angeles, California 90071
Telephone: (213) 330-4500
Facsimile: (213) 330-4501

Attorneys for Plaintiff Fidelity Brokerage Services LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| FIDELITY BROKERAGE SERVICES LLC,<br><br>                 Plaintiff,<br><br>         v.<br><br>JAMES BURI and MORGAN STANLEY SMITH BARNEY LLC,<br><br>                 Defendants. | Case No:  8:18-cv-02246-JVS-ADS<br><br>**AFFIDAVIT OF GERARD T. KINZEL**<br><br>*[Submitted with Notice and Application of TRO, Memorandum of Points and Authorities, Declarations of Stephen Jennings and Sarina Saluja, and [Proposed] Order]*<br><br>Complaint Filed:  December 19, 2018<br>Trial Date:    None Set |

Gerard T. Kinzel declares under penalty of perjury as follows:

1. I am over the age of 18. All statements in this declaration are based on my personal knowledge, or, where indicated, based on my investigation. I submit this affidavit on behalf of Plaintiff Fidelity Brokerage Services LLC ("Fidelity") in support of its Motion for a Temporary Restraining Order and Preliminary Injunction.

2. I am an Assistant Branch Office Manager for the Newport Beach, California Investor Center for Fidelity Brokerage Services LLC ("Fidelity").

3. I have been employed by Fidelity for over 2 years. I began my employment with Fidelity on August 29th, 2016, two weeks before the opening of our Newport Beach Investor Center in Newport Beach, California. I am currently the Assistant Branch Office Manager of the

1
AFFIDAVIT OF GERARD KINZEL

Newport Beach Investor Center and have held this position from the time the branch opened in September of 2016.

4. Prior to his resignation from Fidelity, Defendant James Buri ("Buri") worked as a Vice President, Financial Consultant in Fidelity's Newport Beach Investor Center. In my capacity as Assistant Branch Office Manager, I supervise Financial Consultants in the branch.

5. On November 30, 2018, Buri resigned from Fidelity, effective immediately, to join Morgan Stanley Smith Barney LLC ("Morgan Stanley"), a direct competitor of Fidelity. A true and correct copy of his resignation letter is attached hereto as Exhibit A.

6. As a Financial Consultant at Fidelity, Buri was assigned to service and manage Fidelity's relationship with a select group of Fidelity's customers. The customers serviced by Buri were primarily high net worth households with, on average, over a million dollars in assets under management at Fidelity. By the time of his resignation, Buri had daily access to and had gained knowledge of confidential Fidelity information relating to 453 households, representing over $1.1 billion in customer assets under Fidelity management.

7. Fidelity vigilantly preserves its trade secret customer data so that it does not become available to competitors who could use the data to divert customers, without the investment of time, labor, and capital that Fidelity made to compile the information. Fidelity does not provide its trade secret customer data to competitors. Fidelity maintains its trade secret customer data on password-protected computers, and only employees whose jobs require access to the customer data are provided with such access.

8. Fidelity also maintains and advises its employees of a Global Policy on Information Protection that is displayed on Fidelity's intranet. A true and correct copy of Fidelity's Global Policy on Information Protection is attached hereto as Exhibit B. Fidelity

AFFIDAVIT OF GERARD KINZEL
2

periodically reminds its employees of this policy and provides employees with a Quick Reference Card ("QRC") explaining how to protect specific types of Fidelity confidential information. A true and correct copy of Fidelity's QRC is attached hereto as Exhibit C.

9. Fidelity further protects this confidential information by using various safeguards for its computer system on which the information is stored and through which it is constantly updated. Employees such as the Defendant require passwords to access the Fidelity computer system.

10. Fidelity additionally preserves trade secret customer data by requiring each employee to execute a standard Fidelity Employee Agreement. Fidelity records indicate that Defendant Buri executed Fidelity's Employee Agreement by e-signature in connection with his initial hire on February 15, 2011. A copy of Buri's February 15, 2011 Agreement is attached as Exhibit D. Buri renewed his promises by electronically signing off on the Employee Agreement again on November 15, 2011, in connection with his promotion to become an Investor Center Account Executive with Fidelity. Copy attached as Exhibit E. Buri later renewed his promises by electronically signing off on the Employee Agreement on August 4, 2014, in connection with his transfer to the Irvine, California Investor Center at Fidelity. Copy attached as Exhibit F. Buri again renewed his promises by electronically signing off on the Employee Agreement on September 25, 2015, in connection with his promotion to become a VP Financial Consultant with Fidelity. Copy attached as Exhibit G. Finally Buri electronically signed Fidelity's Employee Agreement on July 27, 2016, when he transferred to Fidelity's Newport Beach, California Investor Center. Copy attached as Exhibit H.

11. In his Employee Agreements, Buri acknowledged the confidentiality of Fidelity's records, including Fidelity's customer lists and customer information, promised that he would

not use or disclose that information for any reason other than performing his duties on behalf of Fidelity, and promised that he would "upon termination ... return all company property ... including but not limited to Confidential Information." Exhibits D-H, paragraphs 1, 3.

12. As consideration for these agreements Defendant executed, Fidelity hired, employed and promoted Defendant, compensated him throughout his employment, provided him with introductory and continuing on-the-job training and education, and allowed him to access confidential customer information. In addition to assigning customers to Defendant to service, Fidelity also provides Financial Consultants, including the Defendant, with the resources to enable them to service customers at Fidelity, including support services, market reporting services, research, sales assistance, access to and use of experts in asset management, tax, estate planning and insurance, and all other requirements necessary to best perform their job for Fidelity's customers. Fidelity also registered the Defendant with the New York Stock Exchange and Financial Industry Regulatory Authority ("FINRA").

13. On Fidelity's behalf, Buri had repeated, regular communications with customers. As such, like all Financial Consultants, Buri became the face of Fidelity to the customers he was assigned to service and, because of the nature of the interactions, became Fidelity's direct link to these customers. Buri's misuse of Fidelity confidential customer information to unfairly compete with Fidelity poses a serious risk to Fidelity's retention of its business, as well as the confidence of its customers.

14. At the time that Buri resigned, I was out of the office so Buri resigned to Brad Norton, the Branch Office Manager of the Mission Viejo Investor Center.

15. Since Buri resigned from Fidelity, we have been receiving reports that he has been soliciting Fidelity customers to transfer their business to Morgan Stanley. Numerous

clients have reported that Buri is calling them. During my conversation with one customer he told me that Buri called him regarding his move to Morgan Stanley and he "was invited to continue working with Jim [Buri] going forward."

16. However, Buri's mailing to Fidelity's customers confirms that he has been aggressively soliciting customers to move their accounts to Morgan Stanley. In his solicitation letter, which was provided to Fidelity by one of its customers, Buri said that:

- he was "extremely pleased" to announce that he had joined Morgan Stanley;
- Morgan Stanley was "one of the leaders in the financial services industry"
- He had determined "after careful consideration" that he could "most effectively assist [client] in meeting your investment goals and objectives through Morgan Stanley."
- "Morgan Stanley is committed to providing investors with the finest financial advice, products and services."
- "Working together we will be able to draw upon the firm's vast network of knowledgeable professionals to help us map out your individual investment strategy."
- "As a Morgan Stanley client [client] will benefit from the resources and support of a global firm."

A copy of Buri's letter to clients is attached as Exhibit I.

17. Buri's letter to Fidelity's clients directly solicits them stating at the end: "I appreciate the confidence you have placed in me and look forward to furthering our successful relationship." See Exhibit I.

18. Customers are also concerned that Buri has taken their confidential and trade secret information to another firm without their knowledge or permission. For example, a client formerly serviced by Buri emailed Fidelity to report his concerns stating: "I thought you might like to know that Jim Buri has mailed and phoned me from his new position at Morgan Stanley. He must have taken his Fidelity client list/contact information when he left." A copy of the customer's email with his name redacted is attached as Exhibit J. Further, when I spoke to this client, he conveyed to me that he was concerned that his personal identification information had been taken by Buri.

AFFIDAVIT OF GERARD KINZEL
5

19. A number of these specific statements were memorialized in Fidelity's customer interaction software program known as "Salesforce." Each time a Fidelity representative has an interaction with a customer, he or she is required to enter information concerning that interaction (i.e. substance of discussion) in the "notes" section of Salesforce. All Salesforce information is identified as confidential and required to be treated as such. In accordance with this required business practice, I, and other employees who spoke with customers formerly serviced by Buri following his resignation recorded those interactions in the Salesforce system. In my capacity as Assistant Branch Office Manager, I review these notes to monitor activities, including with respect to the customers formerly serviced by Buri. True and correct copies of the Salesforce notes relating to these clients and their communications with Fidelity representatives are attached as Exhibit K.

20. The theft and misuse of Fidelity's trade secret customer information to solicit and unfairly compete with Fidelity causes Fidelity both monetary and irreparable harm. Fidelity is irreparably harmed by the actual and threatened loss of customers and customer goodwill caused by unauthorized use of Fidelity's customer information. Fidelity customers have an expectation that their confidential contact and financial information will be protected and not taken or used by departing employees. Indeed, unlike some other brokerage companies, Fidelity does not obtain from its customers the right to use or disclose their information outside of Fidelity. The damage to Fidelity's customer relationships is therefore incalculable as Fidelity cannot put a price on the value of its customer relationships or the damage caused when Defendants improperly misused confidential customer information on behalf of a competitor.

21. Nor can Fidelity calculate the financial loss it may suffer from the loss of any given account resulting from Defendants' wrongful conduct, because there is no way to know for

how long Fidelity might have otherwise retained that client, nor how much business that client might have done with Fidelity or referred to Fidelity in the future had they not been wrongfully solicited by the Defendants.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

_____
GERARD T. KINZEL

Subscribed and sworn to
Before me this 18th day of December, 2018

_____
Notary Public

My Commission Expires: 03/12/2021

> STEVEN CHARLES RAY
> Notary Public - California
> Orange County
> Commission # 2186394
> My Comm. Expires Mar 12, 2021

AFFIDAVIT OF GERARD KINZEL
7