EXHIBIT A

November 30, 2018

Gerard T. Kinzel, Assistant Branch Manager
Fidelity Brokerage Services LLC
1600 Newport Center Drive, Suite 100
Newport Beach, CA  92660

Dear Gerard:

This letter is to advise you and Fidelity Brokerage Services LLC (Fidelity) that I am hereby resigning effective immediately.  I do not possess any originals or copies of Fidelity proprietary documents.

Along with this letter, I am leaving my Fidelity laptop, iPad, cell phone, electronic building pass, parking pass and assorted building and desk keys.  For now, I have also left my personal property.  Please feel free to review my personal property as I will be making arrangements to retrieve it early next week.

Please advise my clients that I can be reached at Morgan Stanley Wealth Management at 28202 Cabot Rd Ste 500, Laguna Niguel, CA 92677.  While I don't anticipate any acrimony, if Fidelity has any legal issues with my move to Morgan Stanley Wealth Management or plans on taking any action, please make sure that my attorney, Harold A. (Drew) Bridges at (310) 375-0434, is given adequate notice of any issue or action and that this letter be submitted to any judge or arbitrator before whom you may appear.

Thank you.

Very truly yours,

James J. Buri

EXHIBIT B



Invested in **you**

# Information Protection Policy
### Securing Private and Proprietary Information (SP2I)
### Effective Date: April 2, 2018

## Contents

Purpose ........................................................................................................... 2

Classifying Information ....................................................................................... 2

Labeling Fidelity Information ............................................................................... 3

Handling Fidelity Information .............................................................................. 5

    Take precautions to avoid unauthorized disclosure of information ........................ 5

    Protect Information on removable media and mobile devices ............................... 6

Storing, Transporting, and Transmitting Fidelity Information ................................. 6

    Store and transport information securely ........................................................... 6

Transmit Information Securely ............................................................................. 7

    Encrypt Fidelity information where required, consider encrypting when it is reasonable and prudent to do so .............. 7

    Notify your ISO or Corporate Security of any known or suspected loss or disclosure of information ................................ 7

    Take additional precautions when working outside the office ............................... 8

SP2I Workspace Reviews .................................................................................... 8

Disposing of Fidelity Information ......................................................................... 9

    Dispose of Information using the method indicated for the type of information ....... 9

Key Terms ....................................................................................................... 10

Responsibilities ............................................................................................... 11

    Managers ...................................................................................................... 11

    Information Security Offices ........................................................................... 11

    Information Owners ....................................................................................... 11

    Third Party and Associate Responsibilities ...................................................... 12

Web Resources and Contacts ............................................................................ 12





Invested in **you**

## Purpose

This policy establishes the requirements for classifying, labeling, handling, and disposing of <u>Fidelity Information</u>.  You are responsible for properly classifying, labeling, handling, and disposing of all Fidelity information that you use and encounter. All Fidelity information must be classified, labeled, handled, and disposed of in accordance with this policy.

This policy applies to all regular and temporary full-time and part–time associates globally.

## Classifying Information:

Properly classify all Fidelity information that is under your control.

You are responsible for classifying all <u>Fidelity Information</u> you use or encounter. Even if the document is already labeled, if you are actively using the document, you are responsible for ensuring that the classification is correct.

All Fidelity information must be assigned one of the four basic classifications described below. Information classification levels are based on the risks to business operations and business reputation and the potential for financial losses to Fidelity, associates and customers.  For examples of each classification, see the <u>SP2I Quick Reference Card</u>. The four classifications and their main characteristics are Fidelity Public, Internal, Confidential and Highly Confidential Information.

**Fidelity Public Information ("Public")**

- intended for general circulation inside and outside Fidelity
- public circulation would not expose Fidelity to any reputational risk, financial loss, or competitive disadvantage

Items classified as Public do not require a SP 2 I label (although they can be labeled if desired) and they do not require any special handling, but you must get approval before classifying any information as Public.

**The methods for getting this approval are as follows:**

- for marketing materials and items distributed to customers, use the process approved for your business unit (such as <u>eReview</u>)
- for presentations, publications, and speeches, consult the <u>External Communications Policy</u> and for all other items, contact <u>Corporate Legal</u>

**Fidelity Internal Information ("Internal")**

- intended for relatively unrestricted circulation inside Fidelity during the normal course of business, including, as appropriate, consultants, vendors, or temporary workers

Invested in **you**



- unauthorized access, disclosure, use or tampering could have a minor adverse effect on the confidentiality or integrity of the information, or could otherwise cause minor impact to Fidelity, Fidelity associates or customers

**Fidelity Confidential Information ("Confidential")**

- intended only for those individuals and groups with a business "need to know"
- unauthorized access, disclosure, use or tampering could have a moderate adverse effect on the confidentiality and integrity of the information, or could otherwise cause moderate impact to Fidelity, Fidelity associates or customers

**Fidelity Highly Confidential Information ("Highly Confidential")**

- intended only for those individuals and groups with a business "need to know"
- unauthorized access, disclosure, use or tampering could have a serious adverse effect on the confidentiality and integrity of the information or could otherwise cause serious impact to Fidelity, Fidelity associates or customers

Within the Highly Confidential category, some types of information require more protective measures than others. See the SP2I Quick Reference Card for more information.

**Changes of classification**

Information may sometimes need to be reclassified. A common example is a new product announcement, which may be classified as Highly Confidential prior to release but then becomes Public upon release. Other information may have a similar "lifecycle" or change in status that warrants reclassification.

Before reclassifying any information to a less restrictive classification, be sure you have the authorization of the information owner. In addition, before reclassifying anything as Public, obtain all necessary approvals as described in this policy.

## Labeling Fidelity Information:

Properly label all non-public Fidelity information that is under your control.

Proper labeling includes using the full label text for the appropriate category. These labels are:

- "Fidelity Internal Information"
- "Fidelity Confidential Information"
- "Fidelity Highly Confidential Information"

If you are in doubt as to the correct label text to use, contact your ISO.

**Except as noted, all forms of non-public Fidelity information must be clearly labeled with a SP2I classification, as follows:**





- Frequency: every page or slide, including cover/title page
- Preferred location: header or footer
- Forms should be labeled according to the contents the form will contain after it is filled in.

**Web pages:**

- Frequency: every page, including home page
- Preferred location: header or footer

## Exceptions

No classification label is required on the following:

- materials approved for classification as Public
- materials intended for end customer use (such as account statements)
- compiled software provided for customer use, such as mobile applications and other client-side programs
- participant reports and other client data requested by clients or intended for their use; however, alternative labeling may be required if a client has requested it
- materials received from end customers
- materials created prior to the publication of this policy and not subsequently revised (note thatfuture revisions of such documents must be labeled according to the version of the policy that is in effect at the time)
- vendor or other third-party information already labeled by the vendor or other source
- information stored or handled by legacy applications and systems that lack the capacity for SP2I labeling

## Additional labeling for legally privileged communications

Any print and electronic materials with information that may be protected by the attorney-client privilege must be labeled "Attorney-Client Communication." This label is in addition to the SP2I classification label.

## Mixed classifications

Whenever information of different classifications is combined, the resulting materials must be classified and handled according to the most restricted information.

## Unlabeled information

If you encounter Fidelity information that appears to require a SP2I label but does not have one, add the correct SP2I label or contact the information owner and request them to do so.[1]

---

[1] Any Fidelity company that is not known to a customer as "Fidelity" (for example Devonshire Investors) may substitute its company name in place of Fidelity in the label.





Invested in **you**

## Handling Fidelity Information

The proper handling of information depends on the information's classification and labeling. The rules below outline both general and specific methods for using, storing, and transmitting information. Rules in this section that apply only to Confidential and Highly Confidential Information are identified.

### Take precautions to avoid unauthorized disclosure of information

With every classification of Fidelity information except Public, follow these precautions:

**Keep discussions behind closed doors whenever possible.**

Use caution when discussing information in public places where you may be overheard, such as restaurants or elevators. Be aware of who is within earshot when you talk on the phone. Bear in mind that unauthorized listeners may be present at any given time, even in an office environment.

Erase whiteboards of Fidelity information when leaving conference rooms or open spaces.

**Limit distribution to those who "need to know."**

Keep access and distribution to the smallest set of recipients that is possible without eliminating any necessary or appropriate recipients. Review addressees (both on e-mail and physical mail) with this in mind prior to distributing information. The more sensitive the information, the more restricted the distribution list should be.

**Outside Fidelity, share information with qualified parties only.**

Before you give a vendor or other external party access to any non-public Fidelity information, be sure that they are restricted from disclosing this information by a non-disclosure agreement (NDA), contract, or other obligation.[2] An NDA is required if sharing data for contract negotiation purposes, proof of concept demonstrations based on a request for proposal (RFP), source code sharing in support of pilot projects, and pre-contract due diligence reviews. If a vendor will have access to personal information, you must make sure that a Fidelity Vendor Technical Risk (VTR) review has been performed, and that the vendor has a contract (not just an NDA) in place with appropriate confidentiality and data security obligations listed.

**Be careful when printing or copying.**

---

[2] The requirement regarding being bound by an NDA, contract, or other obligation of confidentiality may not apply in certain cases: (a) if Fidelity is legally obligated to provide non-public Fidelity information to an external party – in these situations, consult with Legal

(b) for Corporate Policies and similar non-public Fidelity information, if reasonable assurance exists that the recipient will restrict distribution to those with a business – related or legal "need to know" (e.g. applicable corporate policies may be provided in response to a request from a former employee, or requests from or proposals to business partners, clients, or prospects). Contact HR Solutions/Employee Relations at (800) 835-5099, Option 2 for questions on external party access to Corporate Policies. Contact Procurement for non-disclosure agreements (NDA) and questions on external party access for business purposes at http://spendsmart.fmr.com





Invested in **you**

Use one of the following: Internal printer, approved print service (internal or external), or personally supervised printing on any other type of printer (such as at home or while traveling). Don't let sensitive information lie unattended in faxmachine, printer, or copier trays. Take all originals and securely dispose of any unwanted copies

**Never share your passwords**

Do not tell anyone else your passwords, and never store passwords (on paper or electronically) where someone else could find and use them.

**Be mindful of information visible or audible within digital files** (e.g. photos, videos, sound files).

You must handle and store digital files according to the classification requirements of any visible or audible non-public information.

## Protect Information on removable media and mobile devices

Removable media includes but is not limited to: CDs, DVDs, tapes, discs, hard drives, thumb drives, and USB memory sticks. Mobile devices include but are not limited to: laptops, Blackberry, tablet, smartphone, and pager. Employees who use removable media or mobile devices are responsible for the security of the Fidelity information contained on them. In accordance with the Electronics Communications, Social Media and Systems Usage Policy, make these steps part of your routine:

- Keep all removable media and mobile devices securely in hand or within sight at all times while traveling, or at any other time when they cannot be physically secured.
- Mobile devices should not be checked in airline luggage systems unless directed to do so by the airline and/or as a result of a government directive. If not required to check the item, it should remain in the possession of the traveler as hand luggage. If you are not allowed to keep the electronic device in your possession, it should be powered off before securing it in a manner allowable by the air carrier and checking it through to your destination
- When not in active use or transport, secure removable media and mobile devices in a locked compartment or office, or tethered with an approved security cable.
- Save non-public Fidelity information only to approved removable media and mobile devices in accordance with the Electronic Communications, Social Media and Systems Usage Policy and business unit specific policies.

## Storing, Transporting, and Transmitting Fidelity Information

### Store and transport information securely

**For Confidential and Highly Confidential Only Required:**





Invested in **you**

- **Printed Materials:** Store all hard copies in a locked office, locked filing cabinet, or other secured facility that is accessible only to authorized individuals. Highly Confidential Information must remain within Fidelity premises unless there is a specific business reason for copies to be taken outside Fidelity.
- **Electronic Data:** Information stored electronically on websites (such as Ribbit and Fidelity Central), file servers or services such as EDMS and SharePoint must be protected by access controls.
- When transporting these files electronically, you must use a Fidelity approved and encrypted mobile device or removable media

## Transmit Information Securely

**Encrypt Fidelity information where required; consider encrypting when it is reasonable and prudent to do so**

**Required:** Where a technology solution has been determined to be effective and appropriate by a business unit, you must encrypt

- PINs and passwords you transmit or store
- Confidential or Highly Confidential Information stored on removable media
- Confidential or Highly Confidential Information transmitted outside the Fidelity network via e-mail or other methods
- Fidelity employee compensation and performance data transmitted within Fidelity or externally, via email or other methods

You must only use a Fidelity-approved encryption method to provide appropriate data protection and recoverability of Fidelity information.

Refer to the encryption information on the SP2I website or consult with your business unit's ISO for current supported e-mail and file encryption tools. For system- to-system communications, data storage, and password administration, system administrators should consult the applicable technology directives for requirements, protocols and procedures in the Information Security Policies and Controls System.

**Recommended:** Where a technology solution has been determined to be effective and appropriate by a business unit, it is recommended that you encrypt all e-mail and file transmissions of Confidential and Highly Confidential Information inside the Fidelity network.

**Notify your ISO or Corporate Security of any known or suspected loss or disclosure of information**

This includes any cases of access by unauthorized parties as well as any circumstances that might have allowed such access. Examples include sending an unencrypted e-mail containing Confidential or Highly





Invested in **you**

Confidential Information, or sending an e-mail to an incorrect recipient. Be sure to report any incidents immediately.

## Take additional precautions when working outside the office

When working at home or any other remote location, safeguard Fidelity information and media as carefully as you would in the office or when traveling. Make sure no one else in your location can access any non-public Fidelity information. Note that storing printed non-public Fidelity information in a home office or other remote location is not recommended. Save non-public Fidelity information only to approved media, devices and systems in accordance with the Electronic Communications, Social Media and Systems usage Policy.

Local Administrator rights on Fidelity devices and systems are restricted to reduce the likelihood of introducing viruses or malware to the Fidelity network. Downloading software and adding printers or other peripheral devices outside the office must be coordinated with Techworks or local IT contact

## SP2I Workspace Reviews

To monitor compliance with this policy, periodic workspace reviews are required. If conditions in your workplace are not i n compliance, you may receive a violation notice. Most violations involve common oversights: customer information left unattended, visible and not secured on a desk, a password left exposed, or confidential information stored in unlocked drawers or overheads . You can generally avoid a violation notice by taking a look around your workspace for potential violations every day before you leave.

**Security measures concerning financial statements**

Financial statements concerning FMR LLC or any of its subsidiaries or Business Units cannot be released to any person or entity outside Fidelity without prior approval of the Chief Accounting Officer and Deputy General Counsel. See the Procedures for Release of Financial Statements for detail.

**Security measures concerning personal information**

Fidelity employees have a duty to protect personal information. For the purposes of this policy, personal information is considered Highly Confidential Information. This includes lists containing customer information. Exceptions to some handling requirements for personal information may be warranted by context or circumstances. Consult with the information owner, your manager and Information Security Office for guidance about appropriate handling, disposal, and other controls. Use sound judgment and assess risk when working with personal information.

Business contact information for Fidelity employees that is made generally available to Fidelity employees, such as through Fidelity's employee directory, is considered to be internal information. For a description of which personal information of employees can be considered as "Internal Information", please refer to the Employee Personal Information Privacy Notice & Policy. Additional legal requirements may apply to personal





information transmitted to or from other countries or global regions (such as the European Union). Check with Compliance or Corporate Legal.

Logging and masking may be required for personal information before use in a test environment; see the Database Policy.

## Disposing of Fidelity Information

### Dispose of Information using the method indicated for the type of information

Disposal of Fidelity information must occur at the right time and be done in the right way.Whenever you dispose of any Fidelity information, you must consider the following:

- the applicable records retention requirements
- whether it is subject to a legal hold (note that documents subject to a legal hold must not be altered or destroyed)
- the SP2I classification
- the type of media or device involved
- any business-unit specific processes

The instructions below show how to dispose of each type of media, including any requirements for different SP2I categories. For more detailed instructions and for information on bulk disposal or what to do when a prescribed method is unavailable, see the Disposal information on the SP2I website.

### Paper

Any information, regardless of SP2I label, can be placed in a locked Fidelity recycling container.

Confidential and Internal Information can also be left in desk-side recycling containers (where available).

Highly Confidential Information must either be placed in a locked Fidelity recycling container or personally shredded (meaning that you do it yourself) using an approved shredder. This is an option for other information as well if the methods described above are not available to you.

There are no disposal requirements for Public Information or non-business materials.

### Electronic devices

Any Fidelity-issued electronic device must be returned to Fidelity. However, each type of electronic device (including BlackBerrys, cell phones, tablets, servers, laptops, and desktop computers) has a specific disposal protocol. For details on these protocols, consult the Disposal instructions on the SP2I website.





Invested in **you**

You must make all reasonable efforts to confirm when feasible that no non-public Fidelity Information or software is stored on a personal device before any repair service or any device transfer, including sale of the device. Non-public Fidelity software could include business-specific applications or mobile device management software required for security (such as Good Mobile Messaging or Mobile Iron). If you are unable to remove the software yourself, contact Corporate Security to perform a remote wipe of the software from the device.

**All other removable media (such as Tapes, DVDs/CDs and USB Memory Sticks)**

All removable media that contain Fidelity Highly Confidential, Confidential, or Internal information are required to be turned in to Security.

**Recycling and Security**

Although they are primarily identified as recycling bins, the large, locked bins located in Fidelity offices are highly secure. All contents are destroyed beyond reconstruction at a secure site, then recycled.

Contents of small desk-side recycling baskets are treated similarly; the main difference is that the baskets are not locked, and are therefore inappropriate for Highly Confidential Information.

**Records Management and Disposal**

Before disposing of any Fidelity information, consider the following:

- Have you received a legal hold notice about these records?
- Are they official records?
- If you answered "yes" to either of the two questions above, the records can only be disposed of once they are past their records retention date for disposal, and legal hold has been lifted.

## Key Terms

**For purposes of this policy, the following key terms have definitions set forth below:**

**Fidelity Information:** Any information created, controlled, or used by Fidelity for business purposes. This includes customer, vendor, and other third-party information.

**Non-business information:** Information that does not concern Fidelity business in any way (such as an e-mail to a family member about child care arrangements) is considered non-business information. This information falls outside the SP2I and does not need to be labeled.

**Personal Information:** Any information, or combination of information, collected or maintained by Fidelity for its business purposes, by which a particular individual can be identified or that would allow a person to access or use an individual's financial or benefits accounts, or health or compensation information. For information subject to non-US jurisdictional authority, terminology related to Personal Information may vary. For example,





Invested in **you**

the EU General Data Protection Regulation (GDPR) utilizes the term Personal Data, which is defined as "any data related to an identified or identifiable natural person".

Please consult with your Privacy Officer, or similar individuals responsible for privacy, for guidance related to your responsibilities as to the collection, processing, sharing, transmission, retention and destruction of Personal Information.

## Responsibilities

### Managers
**Communicate, support, and help enforce the policy**

Managers are responsible for understanding this policy and for helping to communicate and enforce its terms. Managers should contact HR Solutions (or their local equivalent) to determine how best to address violations.

**Take responsibility for proper handling of information by departing employees**

Whenever an employee terminates, transfers, or relocates, his or her manager is responsible for ensuring that the employee disposes of all documents and materials in accordance with this policy and for leaving the workspace ready for the next occupant. Any tasks left undone by the departing employee are the manager's responsibility to rectify.

### Information Security Offices
**Interpret and administer the policy at the business unit level**

Information Security Offices are responsible for translating the policy into specific controls that are appropriate and effective for their respective business units.

Support implementation by the business units

Information Security Offices are responsible for helping their assigned business units implement enterprise security programs related to this policy. They also are expected to provide guidance and assistance to individual employees around policy comprehension and compliance.

### Information Owners
**Periodically review data classifications**

Information and application owners should periodically review the risk classifications of the resources for which they are responsible, to ensure that the assigned classification levels are still appropriate.

The roles and responsibilities of information owners may be delegated; however, accountability remains with the Information Owner. The responsibilities of information owners include, but are not limited to:

- mandating the implementation of information security policies and controls
- authorizing and periodically reviewing access entitlements





**Invested in you**

- ensuring the resolution of information security-related audit issues
- delegating authority as required within their business area to complete tasks
- periodically reviewing the information classifications of resources under their control
- maintaining an inventory of information resources (i.e., data, hardware and software) under their control

## Third Party and Associate Responsibilities

The requirements set forth in sections titled Handling Fidelity Information, Labeling Fidelity Information, Storing, Transporting, and Transmitting Fidelity Information, and Disposing of Fidelity Information in this policy apply to those <u>independent contractors</u> that have access to Fidelity premises, systems, or information onsite and off premises. Relevant requirements should be included in the contracts with those independent contractors. Fidelity employees are responsible for ensuring independent contractors adequately protect Fidelity information.

## Web Resources and Contacts

Corporate Legal

Corporate Security

eReview

Information Security Policies System of Record

ISO List

Records and Information Management

Procurement

SP2I Program Website

**Related Policies and Procedures**

Access, Use, and Recording of Information Policy
Code of Ethics for Personal Investing Policy
Electronic Communications, Social Media, and Systems
Usage Policy
Employee Personal Information Privacy – Notice and
Policy
External Communications Policy
Flexible Work Options Policy
Inside Information Policy
Privacy Policy
Procedures for Release of Financial Statements
Records and Information Management Policy
Software Use and Compliance Policy
Vendor Privacy Oversight Policy

**Regional/BU Policies:**
Information Protection Policy- SP2I (China Regional)



EXHIBIT C

# Information Protection Policy (SP₂l) Quick Reference
## Classify and Label

| CLASSIFICATION | | | |
| --- | --- | --- | --- |
| **Public** Information released for public use.[1] Explicit approval is needed before assigning this classification. | **Fidelity Internal Information** Information that is typically available to all Fidelity employees. | **Fidelity Confidential Information** Sensitive information, available only to those with a "business need to know." | **Fidelity Highly Confidential (HC) Information** High-risk information that requires strict controls. |
| Label Optional | Label Required | Label Required | Label Required |
| **Examples** | **Examples** | **Examples** | **Examples** |
| • Brochures, published marketing materials<br>• Press releases<br>• Articles in the press<br>• Public websites<br>• Stock quotes<br>• Regulatory and legal filings<br>• Published annual reports<br>• Published fund prospectuses<br>• Code contributed to Open Source<br>• Released patents | • Employee contact information (for example, name or email)<br>• Organization charts<br>• Basic emergency response plans<br>• Fidelity policies and procedures<br>• The Fidelity Exchange, Fidelity NOW Inbox, and internal newsletters<br>• Employee web/intranet portals<br>• Fidelity training materials<br>• General business correspondence with no customer/employee data | • Unreleased fund holdings/trades<br>• Pre-release marketing materials<br>• Plan/client data<br>• Non-public legal work and litigation information<br>• Budget information and non-public financial statements<br>• Business strategies and plans<br>• Purchasing/bid information<br>• Security findings or reports (for example, SSAE16)<br>• Non-security technical specifications/architectures | • Passwords and PINs<br>• System credentials<br>• Social Security Numbers<br>• Most customer and employee information<br>• Proposed acquisitions, ventures, and divestitures<br>• Security system architectures and procedures<br>• Reports of significant exposures, risk assessments, and penetration test results<br>• Highly sensitive legal work<br>• Management committee reports<br>• Trade secrets<br>• Private encryption keys |

[1] Note that Public information may have a different classification prior to its release.

**Fidelity source code may be classified as Internal, Confidential, or Highly Confidential. Refer to the *source code hard card* and *TD-715* for more details.**

**Know the policy** For more SP₂l resources and the full SP₂l Policy visit ECS on Fidelity Central.

**Seek guidance** If you have questions or concerns about SP₂l, or if you know of items that are out of compliance, please contact your manager or your business unit's Information Security Office.

**Use sound judgment** The lists above are only examples, not definitive classifications. Any item containing customer data, security information, pre-launch new product details, or similarly sensitive information should be classified as Fidelity Highly Confidential Information.

Effective Date: May 2016

# Information Protection Policy (SP₂I) Quick Reference

## Handle and Dispose

| | | CLASSIFICATION | | | | | |
|---|---|---|---|---|---|---|---|
| | Public | Fidelity Internal Information | Fidelity Confidential Information | Fidelity Highly Confidential (HC) Information | | | |
| | | | | Basic HC | Personal Information | Employee Data[2] | Your PINs/ Passwords |
| **Handle** | | | | | | | |
| Get approval before assigning classification | • | | | | | | |
| Do not share outside Fidelity (such as with vendors or contractors) except or a need-to-know basis and when the recipient is restricted from disclosing the information to others | | | • | • | • | • | Never Share |
| Use caution when discussing in public | | • | • | • | • | • | N/A |
| Report possible or actual loss immediately to ISO or Corporate Security | | • | • | • | • | • | • |
| Encrypt when sending or transporting outside Fidelity[3] | | | • | • | • | • | N/A |
| Inside Fidelity, share only on a need-to-know basis | | | • | • | • | • | N/A |
| Store locked in desk/office | | | • | • | • | • | N/A |
| Limit access even on internal websites and systems | | | • | • | • | • | N/A |
| Do not leave unattended in copiers/printers | | | • | • | • | • | N/A |
| Do not remove from Fidelity premises without a specific business requirement | | | | | • | • | N/A |
| Encrypt when e-mailing inside Fidelity[3] | | | Strongly Recommended | | • | • | N/A |
| Never share with anyone, and never carry with the related device | | | | | | | • |
| **Dispose** | | | | | | | |
| Place in desk-side recycling container (paper only) | • | • | | | | | |
| Personally shred (paper only) | | | • | • | • | • | • |
| Place in a locked Fidelity recycling container (paper) or turn in to local Security Office (removable media) | | | • | • | • | • | • |

[1] See policy for complete definition.   [2] Fidelity employee compensation and performance data only.   [3] See the policy for detailed guidance.

Fidelity Internal Information

EXHIBIT D

DocuSign Envelope ID: 63682757-933A-4DF1-94E4-D4965839401D

**EMPLOYEE AGREEMENT**

James Buri_____ ("Employee") wishes to be employed by FMR LLC and/or any entity that is directly or indirectly, wholly or in part, owned or controlled by or under common control with FMR LLC (the "Fidelity Companies"). As a condition of employment, Employee and the Fidelity Companies agree to abide by this Agreement. This Agreement describes certain aspects of Employee's employment, protects Confidential Information and goodwill of the Fidelity Companies, and assists the Fidelity Companies in complying with their legal, regulatory, and other obligations.

1.      Confidential Information. To assist Employee in the performance of his/her duties, the Fidelity Companies agree to provide to Employee training and/or education regarding the Fidelity Companies' business methods, and agree to provide to Employee access to certain Confidential Information belonging to the Fidelity Companies. Confidential Information consists of all information pertaining to the business of any of the Fidelity Companies that is not generally known to the public at the time made known to Employee. It includes but is not limited to: trade secrets; secret, confidential, and proprietary information; information protected by the attorney-client privilege; marketing, financial, research, trading, portfolio, and sales information; computer passwords and program designs; proprietary computer software designs and hardware configurations; proprietary technology; new product and service ideas; business, pricing, and marketing plans; customer, prospect, vendor, and personnel lists; financial and other personal information regarding customers and employees; confidential information about other companies and their products; and information expressly designated as "Fidelity Highly Confidential," "Fidelity Confidential," or "Fidelity Internal." All Confidential Information is imparted to Employee in a relationship of confidence. As a condition and in consideration of the Fidelity Companies' agreement to provide Employee with training and/or education and Confidential Information, Employee agrees that during his/her employment and thereafter, Employee will not copy, reproduce, use, disclose, or discuss in any manner, in whole or in part, any Confidential Information unless (1) necessary for Employee to carry out his/her job; (2) necessary for employees or other agents of the Fidelity Companies to carry out their duties and responsibilities; or (3) authorized in writing by the Fidelity Companies. Employee also will not retain any copies, notes, or excerpts of Confidential Information upon termination of his/her employment. Employee will promptly notify the Fidelity Companies of any inadvertent, unauthorized, or negligent copying, reproduction, use, disclosure, or discussion of Confidential Information. Employee will not open, read, or in any way access Confidential Information without authorization.

2.      Systems Access. In order to carry out his/her responsibilities, Employee may be given access to various computer systems and passwords, user identifications, or other authenticating information ("password(s)"). Employee will not disclose his/her password(s) to anyone except in accordance with Fidelity policy. While incidental personal use of systems may occur, this is not the purpose of providing access; rather, all systems generally are to be used for legitimate Fidelity business purposes only, and all items created, accessed, or stored will be treated as Fidelity property for all purposes, including but not limited to monitoring, access, recording, review, and disclosure by Fidelity. Employee will adhere to all software licensing or other agreements applicable to systems and to Fidelity's expectations and policies regarding systems usage. Employee's authorization to access Fidelity systems shall expire when Employee leaves Fidelity's employ.

3.      Company Property. Upon termination of Employee's employment, in the event Employee's employment no longer requires access to Confidential Information, or at any earlier time as requested by the Fidelity Companies, Employee will return all company property, including but not limited to his/her identification badge, company credit cards, company-owned equipment (such as cellular telephones, beepers, and laptop computers), and all documents and materials received from or created for or by any of the Fidelity Companies, including but not limited to Confidential Information.

4.      Outside Business Activities. So long as Employee is employed by the Fidelity Companies, Employee will not engage in any other employment or business activities unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for outside activities may be withdrawn at any time.

5.      Ethics and Outside Brokerage Accounts. So long as Employee is employed by the Fidelity Companies, Employee will adhere to the Code of Ethics for Personal Investing and the Statement of Policies and Procedures on Insider Trading and all other policies, procedures, or guidelines regarding Fidelity's standards for the proper conduct of business. If Employee is an employee of or associated with a registered broker-dealer or registered with the New York Stock Exchange or the Financial Industry Regulatory Authority, Employee will comply with industry agreements, standards, and regulations, and all special policies, compliance standards, and guidelines of the Fidelity Companies applicable to those in regulated businesses. Neither Employee nor Employee's spouse will maintain any brokerage account that either Employee or Employee's spouse owns or in which either Employee or Employee's spouse has a beneficial interest through any non-Fidelity broker-dealer unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for an outside account may be withdrawn at any time.

6.      Non-solicitation. In consideration of the training and/or education and access to Confidential Information provided by the Fidelity Companies, and so as to enforce Employee's agreement regarding such Confidential Information, Employee agrees that during his/her employment and for a period of one year following his/her separation from employment by the Fidelity Companies, Employee will not use any Confidential Information belonging to the Fidelity Companies to directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer or prospective customer of the Fidelity Companies to divert or take away all or any portion of his/her/its business from the Fidelity Companies or otherwise cease the relationship with the Fidelity Companies. During this same period, Employee will not directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any

Employee's Initials:_____

DocuSign Envelope ID: 63682757-933A-4DF1-94E4-D4965839401D

manner or induce or attempt to induce any customer or prospective customer with whom Employee had personal contact or about whom Employee otherwise learned during the course of Employee's employment with the Fidelity Companies. Employee also will not, directly or indirectly, on his/her own behalf or on behalf of anyone or any company, hire, solicit in any manner, or induce or attempt to induce any employee of any of the Fidelity Companies to leave his/her employment.

7.    Inventions and Use of Name or Likeness. Employee will disclose and Employee hereby assigns to Fidelity as Fidelity's exclusive property all ideas, writings, inventions, products, methods, techniques, discoveries, improvements, and technical or business innovations (the "Inventions") that Employee makes or conceives, whether or not patentable or copyrightable, either solely or jointly with others, during the period of his/her employment. All written or computer coded materials manifested in documents, systems design, disks, tapes, drawings, reports, specifications, data, memoranda, or otherwise (the "Materials") made or conceived during Employee's employment shall be considered works made for hire, and all right, title, and interest in the Materials shall be owned by the Fidelity Companies. To the extent that the Materials may be held not to be works made for hire, Employee hereby assigns the sole right, title, and interest in the Materials to the Fidelity Companies. In addition, Employee will execute all necessary paperwork and provide all other reasonable assistance requested by any of the Fidelity Companies, either during his/her employment or thereafter, to enable the Fidelity Companies to obtain, maintain, or enforce in itself or its nominees, patents, copyrights, trademarks, or other legal protection on the Inventions in any and all countries. These provisions with respect to Inventions and Materials apply only to Inventions and Materials which (i) are along the lines of the business or work of any of the Fidelity Companies; (ii) result from or are suggested by any work which Employee does for the Fidelity Companies; (iii) are made or conceived using equipment or other materials of the Fidelity Companies; or (iv) are made or conceived during regular hours of work. These provisions do not apply to any invention that qualifies fully under the terms of California Labor Code Section 2870. In addition, Employee hereby authorizes the Fidelity Companies to use, publish, and copyright all or part of his/her name, voice, picture, portrait, and likeness as the Fidelity Companies may decide in their sole discretion, in all media and types of advertising for any product or service or for any other lawful purpose, without review by Employee.

8.    Agreements with Others. Employee represents and warrants that his/her employment by the Fidelity Companies will not require Employee to violate any agreement Employee may have with any employer or other business, and that Employee will not engage in any activities in violation of any such agreement. Without limiting the foregoing, Employee will not use or disclose to the Fidelity Companies any confidential information belonging to others. Employee further represents and warrants that Employee is not a party to any agreement, and Employee owes no duty to anyone, that limits or affects his/her ability to perform his/her duties for the Fidelity Companies. Employee has attached to this Agreement a list of all confidentiality, inventions, non-solicitation, non-compete, or other restrictive agreements to which Employee is or has been a party.

9.    At Will Employment. Employee's employment by the Fidelity Companies is at will and may be terminated by Employee or by the Fidelity Companies at any time and for any reason, with or without cause or notice, during or after any applicable initial evaluation period.

10.   Miscellaneous. This agreement will continue in full force and effect throughout Employee's tenure with any of the Fidelity Companies, regardless of any changes in Employee's responsibilities, the position Employee holds, or the particular Fidelity Company that employs Employee. Any agreement contrary to any of the provisions of this agreement or modifying this agreement in any way must be in writing and must be signed by the President or Human Resources Vice President of the Fidelity Company for which Employee works. Employee will disclose the existence and terms of this Agreement to any future employer of Employee. Employee's obligations under this Agreement shall survive the termination of Employee's employment with the Fidelity Companies. As to the provisions pertaining to Confidential Information, Employee's obligations shall continue until such time as the Confidential Information becomes known to the general public through no action on Employee's part. Any violation of this Agreement will cause irreparable damage to the Fidelity Companies or any of them. Therefore, the Fidelity Companies or any of them shall have the right to seek specific enforcement of this Agreement through equitable and injunctive relief, in addition to any other remedies available. This agreement will be for the benefit of the Fidelity Companies, its successors, and its assigns. This agreement is governed in accordance with Massachusetts law and is signed under seal.

**This agreement contains important information regarding the terms of Employee's employment with the Fidelity Companies. Employee and the Fidelity Companies hereby agree to adhere to it.**

Feb-15-2011 | 15:10 PT

_James Bull_
2E6F353E753947B...
_____

**Employee**

2/15/2011
_____

**Date**

_Anne Ames_

**Anne Ames**
**VP, Head of Staffing**

02/15/2011
_____

**Date**

Updated 06/10

1.914243.100

EXHIBIT E

DocuSign Envelope ID: E4E6D1E3-1646-42B7-AE4D-70A0642C248A

**EMPLOYEE AGREEMENT**

JAMES BURI_____ ("Employee") wishes to be employed by FMR LLC and/or any entity that is directly or indirectly, wholly or in part, owned or controlled by or under common control with FMR LLC (the "Fidelity Companies"). As a condition of employment, Employee and the Fidelity Companies agree to abide by this Agreement. This Agreement describes certain aspects of Employee's employment, protects Confidential Information and goodwill of the Fidelity Companies, and assists the Fidelity Companies in complying with their legal, regulatory, and other obligations.

1.       Confidential Information. To assist Employee in the performance of his/her duties, the Fidelity Companies agree to provide to Employee training and/or education regarding the Fidelity Companies' business methods, and agree to provide to Employee access to certain Confidential Information belonging to the Fidelity Companies. Confidential Information consists of all information pertaining to the business of any of the Fidelity Companies that is not generally known to the public at the time made known to Employee. It includes but is not limited to trade secrets; secret, confidential, and proprietary information; information protected by the attorney-client privilege; marketing, financial, research, trading, portfolio, and sales information; computer passwords and program designs; proprietary computer software designs and hardware configurations; proprietary technology; new product and service ideas; business, pricing, and marketing plans; customer, prospect, vendor, and personnel lists; financial and other personal information regarding customers and employees; confidential information about other companies and their products; and information expressly designated as "Fidelity Highly Confidential," "Fidelity Confidential," or "Fidelity Internal." All Confidential Information is imparted to Employee in a relationship of confidence. As a condition and in consideration of the Fidelity Companies' agreement to provide Employee with training and/or education and Confidential Information, Employee agrees that during his/her employment and thereafter, Employee will not copy, reproduce, use, disclose, or discuss in any manner, in whole or in part, any Confidential Information unless (1) necessary for Employee to carry out his/her job; (2) necessary for employees or other agents of the Fidelity Companies to carry out their duties and responsibilities; or (3) authorized in writing by the Fidelity Companies. Employee also will not retain any copies, notes, or excerpts of Confidential Information upon termination of his/her employment. Employee will promptly notify the Fidelity Companies of any inadvertent, unauthorized, or negligent copying, reproduction, use, disclosure, or discussion of Confidential Information. Employee will not open, read, or in any way access Confidential Information without authorization.

2.       Systems Access. In order to carry out his/her responsibilities, Employee may be given access to various computer systems and passwords, user identifications, or other authenticating information ("password(s)"). Employee will not disclose his/her password(s) to anyone except in accordance with Fidelity policy. While incidental personal use of systems may occur, this is not the purpose of providing access; rather, all systems generally are to be used for legitimate Fidelity business purposes only, and all items created, accessed, or stored will be treated as Fidelity property for all purposes, including but not limited to monitoring, access, recording, review, and disclosure by Fidelity. Employee will adhere to all software licensing or other agreements applicable to systems and to Fidelity's expectations and policies regarding systems usage. Employee's authorization to access Fidelity systems shall expire when Employee leaves Fidelity's employ.

3.       Company Property. Upon termination of Employee's employment, in the event Employee's employment no longer requires access to Confidential Information, or at any earlier time as requested by the Fidelity Companies, Employee will return all company property, including but not limited to his/her identification badge, company credit cards, company-owned equipment (such as cellular telephones, beepers, and laptop computers), and all documents and materials received from or created for or by any of the Fidelity Companies, including but not limited to Confidential Information.

4.       Outside Business Activities. So long as Employee is employed by the Fidelity Companies, Employee will not engage in any other employment or business activities unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for outside activities may be withdrawn at any time.

5.       Ethics and Outside Brokerage Accounts. So long as Employee is employed by the Fidelity Companies, Employee will adhere to the Code of Ethics for Personal Investing and the Statement of Policies and Procedures on Insider Trading and all other policies, procedures, or guidelines regarding Fidelity's standards for the proper conduct of business. If Employee is an employee of or associated with a registered broker-dealer or registered with the New York Stock Exchange or the Financial Industry Regulatory Authority, Employee will comply with industry agreements, standards, and regulations, and all special policies, compliance standards, and guidelines of the Fidelity Companies applicable to those in regulated businesses. Neither Employee nor Employee's spouse will maintain any brokerage account that either Employee or Employee's spouse owns or in which either Employee or Employee's spouse has a beneficial interest through any non-Fidelity broker-dealer unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for an outside account may be withdrawn at any time.

6.       Non-solicitation. In consideration of the training and/or education and access to Confidential Information provided by the Fidelity Companies, and so as to enforce Employee's agreement regarding such Confidential Information, Employee agrees that during his/her employment and for a period of one year following his/her separation from employment by the Fidelity Companies, Employee will not use any Confidential Information belonging to the Fidelity Companies to directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer or prospective customer of the Fidelity Companies to divert or take away all or any portion of his/her/its business from the Fidelity Companies or otherwise cease the relationship with the Fidelity Companies. During this same period, Employee will not directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any

Employee's Initials:_____

DocuSign Envelope ID: E4E6D1E3-1646-42B7-AE4D-70A0642C248A

manner or induce or attempt to induce any customer or prospective customer with whom Employee had personal contact or about whom Employee otherwise learned during the course of Employee's employment with the Fidelity Companies. Employee also will not, directly or indirectly, on his/her own behalf or on behalf of anyone or any company, hire, solicit in any manner, or induce or attempt to induce any employee of any of the Fidelity Companies to leave his/her employment.

7. <u>Inventions and Use of Name or Likeness</u>. Employee will disclose and Employee hereby assigns to Fidelity as Fidelity's exclusive property all ideas, writings, inventions, products, methods, techniques, discoveries, improvements, and technical or business innovations (the "Inventions") that Employee makes or conceives, whether or not patentable or copyrightable, either solely or jointly with others, during the period of his/her employment. All written or computer coded materials manifested in documents, systems design, disks, tapes, drawings, reports, specifications, data, memoranda, or otherwise (the "Materials") made or conceived during Employee's employment shall be considered works made for hire, and all right, title, and interest in the Materials shall be owned by the Fidelity Companies. To the extent that the Materials may be held not to be works made for hire, Employee hereby assigns the sole right, title, and interest in the Materials to the Fidelity Companies. In addition, Employee will execute all necessary paperwork and provide all other reasonable assistance requested by any of the Fidelity Companies, either during his/her employment or thereafter, to enable the Fidelity Companies to obtain, maintain, or enforce in itself or its nominees, patents, copyrights, trademarks, or other legal protection on the Inventions in any and all countries. These provisions with respect to Inventions and Materials apply only to Inventions and Materials which (i) are along the lines of the business or work of any of the Fidelity Companies; (ii) result from or are suggested by any work which Employee does for the Fidelity Companies; (iii) are made or conceived using equipment or other materials of the Fidelity Companies; or (iv) are made or conceived during regular hours of work. These provisions do not apply to any invention that qualifies fully under the terms of California Labor Code Section 2870. In addition, Employee hereby authorizes the Fidelity Companies to use, publish, and copyright all or part of his/her name, voice, picture, portrait, and likeness as the Fidelity Companies may decide in their sole discretion, in all media and types of advertising for any product or service or for any other lawful purpose, without review by Employee.

8. <u>Agreements with Others</u>. Employee represents and warrants that his/her employment by the Fidelity Companies will not require Employee to violate any agreement Employee may have with any employer or other business, and that Employee will not engage in any activities in violation of any such agreement. Without limiting the foregoing, Employee will not use or disclose to the Fidelity Companies any confidential information belonging to others. Employee further represents and warrants that Employee is not a party to any agreement, and Employee owes no duty to anyone, that limits or affects his/her ability to perform his/her duties for the Fidelity Companies. Employee has attached to this Agreement a list of all confidentiality, inventions, non-solicitation, non-compete, or other restrictive agreements to which Employee is or has been a party.

9. <u>At Will Employment</u>. Employee's employment by the Fidelity Companies is at will and may be terminated by Employee or by the Fidelity Companies at any time and for any reason, with or without cause or notice, during or after any applicable initial evaluation period.

10. <u>Miscellaneous</u>. This agreement will continue in full force and effect throughout Employee's tenure with any of the Fidelity Companies, regardless of any changes in Employee's responsibilities, the position Employee holds, or the particular Fidelity Company that employs Employee. Any agreement contrary to any of the provisions of this agreement or modifying this agreement in any way must be in writing and must be signed by the President or Human Resources Vice President of the Fidelity Company for which Employee works. Employee will disclose the existence and terms of this Agreement to any future employer of Employee. Employee's obligations under this Agreement shall survive the termination of Employee's employment with the Fidelity Companies. As to the provisions pertaining to Confidential Information, Employee's obligations shall continue until such time as the Confidential Information becomes known to the general public through no action on Employee's part. Any violation of this Agreement will cause irreparable damage to the Fidelity Companies or any of them. Therefore, the Fidelity Companies or any of them shall have the right to seek specific enforcement of this Agreement through equitable and injunctive relief, in addition to any other remedies available. This agreement will be for the benefit of the Fidelity Companies, its successors, and its assigns. This agreement is governed in accordance with Massachusetts law and is signed under seal.

**This agreement contains important information regarding the terms of Employee's employment with the Fidelity Companies. Employee and the Fidelity Companies hereby agree to adhere to it.**

Nov-15-2011 | 07:59 PT

*JAMES BURI*

AAFC0F5555874B2...
_____     11/15/2011
**Employee**                                                          _____
                                                                              **Date**

*Anne Ames*

**Anne Ames**
**VP, Head of Staffing**
                                                              11/14/2011
                                                              _____
                                                              **Date**

EXHIBIT F

Esign ID : 456ccc1f-0a87-4bca-a3a2-c0c5c3cbbc2c

**EMPLOYEE AGREEMENT**

JAMES BURI _____ ("Employee") wishes to be employed by FMR LLC and/or any entity that is directly or indirectly, wholly or in part, owned or controlled by or under common control with FMR LLC (the "Fidelity Companies"). As a condition of employment, Employee and the Fidelity Companies agree to abide by this Agreement. This Agreement describes certain aspects of Employee's employment, protects Confidential Information and goodwill of the Fidelity Companies, and assists the Fidelity Companies in complying with their legal, regulatory, and other obligations.

1.        Confidential Information. To assist Employee in the performance of his/her duties, the Fidelity Companies agree to provide to Employee training and/or education regarding the Fidelity Companies' business methods, and agree to provide to Employee access to certain Confidential Information belonging to the Fidelity Companies. Confidential Information consists of all information pertaining to the business of any of the Fidelity Companies that is not generally known to the public at the time made known to Employee. It includes but is not limited to: trade secrets; secret, confidential, and proprietary information; information protected by the attorney-client privilege; marketing, financial, research, trading, portfolio, and sales information; computer passwords and program designs; proprietary computer software designs and hardware configurations; proprietary technology; new product and service ideas; business, pricing, and marketing plans; customer, prospect, vendor, and personnel lists; financial and other personal information regarding customers and employees; confidential information about other companies and their products; and information expressly designated as "Fidelity Highly Confidential," "Fidelity Confidential," or "Fidelity Internal." All Confidential Information is imparted to Employee in a relationship of confidence. As a condition and in consideration of the Fidelity Companies' agreement to provide Employee with training and/or education and Confidential Information, Employee agrees that during his/her employment and thereafter, Employee will not copy, reproduce, use, disclose, or discuss in any manner, in whole or in part, any Confidential Information unless (1) necessary for Employee to carry out his/her job; (2) necessary for employees or other agents of the Fidelity Companies to carry out their duties and responsibilities; or (3) authorized in writing by the Fidelity Companies. Employee also will not retain any copies, notes, or excerpts of Confidential Information upon termination of his/her employment. Employee will promptly notify the Fidelity Companies of any inadvertent, unauthorized, or negligent copying, reproduction, use, disclosure, or discussion of Confidential Information. Employee will not open, read, or in any way access Confidential Information without authorization.

2.        Systems Access. In order to carry out his/her responsibilities, Employee may be given access to various computer systems and passwords, user identifications, or other authenticating information ("password(s)"). Employee will not disclose his/her password(s) to anyone except in accordance with Fidelity policy. While incidental personal use of systems may occur, this is not the purpose of providing access; rather, all systems generally are to be used for legitimate Fidelity business purposes only, and all items created, accessed, or stored will be treated as Fidelity property for all purposes, including but not limited to monitoring, access, recording, review, and disclosure by Fidelity. Employee will adhere to all software licensing or other agreements applicable to systems and to Fidelity's expectations and policies regarding systems usage. Employee's authorization to access Fidelity systems shall expire when Employee leaves Fidelity's employ.

3.        Company Property. Upon termination of Employee's employment, in the event Employee's employment no longer requires access to Confidential Information, or at any earlier time as requested by the Fidelity Companies, Employee will return all company property, including but not limited to his/her identification badge, company credit cards, company-owned equipment (such as cellular telephones, beepers, and laptop computers), and all documents and materials received from or created for or by any of the Fidelity Companies, including but not limited to Confidential Information.

4.        Outside Business Activities. So long as Employee is employed by the Fidelity Companies, Employee will not engage in any other employment or business activities unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for outside activities may be withdrawn at any time.

5.        Ethics and Outside Brokerage Accounts. So long as Employee is employed by the Fidelity Companies, Employee will adhere to the Code of Ethics for Personal Investing and the Statement of Policies and Procedures on Insider Trading and all other policies, procedures, or guidelines regarding Fidelity's standards for the proper conduct of business. If Employee is an employee of or associated with a registered broker-dealer or registered with the New York Stock Exchange or the Financial Industry Regulatory Authority, Employee will comply with industry agreements, standards, and regulations, and all special policies, compliance standards, and guidelines of the Fidelity Companies applicable to those in regulated businesses. Neither Employee nor Employee's spouse will maintain any brokerage account that either Employee or Employee's spouse owns or in which either Employee or Employee's spouse has a beneficial interest through any non-Fidelity broker-dealer unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for an outside account may be withdrawn at any time.

6.        Non-solicitation. In consideration of the training and/or education and access to Confidential Information provided by the Fidelity Companies, and so as to enforce Employee's agreement regarding such Confidential Information, Employee agrees that during his/her employment and for a period of one year following his/her separation from employment by the Fidelity Companies, Employee will not use any Confidential Information belonging to the Fidelity Companies to directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer or prospective customer of the Fidelity Companies to divert or take away all or any portion of his/her/its business from the Fidelity Companies or otherwise cease the relationship with the Fidelity Companies. During this same period, Employee will not directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any

Employee's Initials: _JB____

manner or induce or attempt to induce any customer or prospective customer with whom Employee had personal contact or about whom Employee otherwise learned during the course of Employee's employment with the Fidelity Companies. Employee also will not, directly or indirectly, on his/her own behalf or on behalf of anyone or any company, hire, solicit in any manner, or induce or attempt to induce any employee of any of the Fidelity Companies to leave his/her employment.

7.    <u>Inventions and Use of Name or Likeness</u>. Employee will disclose and Employee hereby assigns to Fidelity as Fidelity's exclusive property all ideas, writings, inventions, products, methods, techniques, discoveries, improvements, and technical or business innovations (the "Inventions") that Employee makes or conceives, whether or not patentable or copyrightable, either solely or jointly with others, during the period of his/her employment. All written or computer coded materials manifested in documents, systems design, disks, tapes, drawings, reports, specifications, data, memoranda, or otherwise (the "Materials") made or conceived during Employee's employment shall be considered works made for hire, and all right, title, and interest in the Materials shall be owned by the Fidelity Companies. To the extent that the Materials may be held not to be works made for hire, Employee hereby assigns the sole right, title, and interest in the Materials to the Fidelity Companies. In addition, Employee will execute all necessary paperwork and provide all other reasonable assistance requested by any of the Fidelity Companies, either during his/her employment or thereafter, to enable the Fidelity Companies to obtain, maintain, or enforce in itself or its nominees, patents, copyrights, trademarks, or other legal protection on the Inventions in any and all countries. These provisions with respect to Inventions and Materials apply only to Inventions and Materials which (i) are along the lines of the business or work of any of the Fidelity Companies; (ii) result from or are suggested by any work which Employee does for the Fidelity Companies; (iii) are made or conceived using equipment or other materials of the Fidelity Companies; or (iv) are made or conceived during regular hours of work. These provisions do not apply to any invention that qualifies fully under the terms of California Labor Code Section 2870. In addition, Employee hereby authorizes the Fidelity Companies to use, publish, and copyright all or part of his/her name, voice, picture, portrait, and likeness as the Fidelity Companies may decide in their sole discretion, in all media and types of advertising for any product or service or for any other lawful purpose, without review by Employee.

8.    <u>Agreements with Others</u>. Employee represents and warrants that his/her employment by the Fidelity Companies will not require Employee to violate any agreement Employee may have with any employer or other business, and that Employee will not engage in any activities in violation of any such agreement. Without limiting the foregoing, Employee will not use or disclose to the Fidelity Companies any confidential information belonging to others. Employee further represents and warrants that Employee is not a party to any agreement, and Employee owes no duty to anyone, that limits or affects his/her ability to perform his/her duties for the Fidelity Companies. Employee has attached to this Agreement a list of all confidentiality, inventions, non-solicitation, non-compete, or other restrictive agreements to which Employee is or has been a party.

9.    <u>At Will Employment</u>. Employee's employment by the Fidelity Companies is at will and may be terminated by Employee or by the Fidelity Companies at any time and for any reason, with or without cause or notice, during or after any applicable initial evaluation period.

10.    <u>Miscellaneous</u>. This agreement will continue in full force and effect throughout Employee's tenure with any of the Fidelity Companies, regardless of any changes in Employee's responsibilities, the position Employee holds, or the particular Fidelity Company that employs Employee. Any agreement contrary to any of the provisions of this agreement or modifying this agreement in any way must be in writing and must be signed by the President or Human Resources Vice President of the Fidelity Company for which Employee works. Employee will disclose the existence and terms of this Agreement to any future employer of Employee. Employee's obligations under this Agreement shall survive the termination of Employee's employment with the Fidelity Companies. As to the provisions pertaining to Confidential Information, Employee's obligations shall continue until such time as the Confidential Information becomes known to the general public through no action on Employee's part. Any violation of this Agreement will cause irreparable damage to the Fidelity Companies or any of them. Therefore, the Fidelity Companies or any of them shall have the right to seek specific enforcement of this Agreement through equitable and injunctive relief, in addition to any other remedies available. This agreement will be for the benefit of the Fidelity Companies, its successors, and its assigns.  The terms of this Agreement and any dispute out of it shall be governed by, and construed in accordance with, the laws of the state in which Employee currently is or, once Employee is no longer employed, was last, employed by Fidelity, without giving effect to such state's conflict of law principles. This Agreement is signed under seal.

**This agreement contains important information regarding the terms of Employee's employment with the Fidelity Companies. Employee and the Fidelity Companies hereby agree to adhere to it.**

*Candidate :JAMES BURI*
*Candidate eSignature IP Address : 10.4.104.10*                              *Candidate eSigned Date : 08/04/2014 3:35:13 PM*
**Employee**                                                                                                    **Date**


*Tara N Amaral*

**Tara Amaral**
**SVP, Head of Talent Aquisition**

2

EXHIBIT G

Mandatory fields are marked with a red indicator.
**Employee Agreement**

# Employee Agreement

James Buri  ("Employee") wishes to be employed by FMR LLC and/or any entity that is directly or indirectly, wholly or in part, owned or controlled by or under common control with FMR LLC (the "Fidelity Companies"). As a condition of employment, Employee and the Fidelity Companies agree to abide by this Agreement. This Agreement describes certain aspects of Employee's employment, protects Confidential Information and goodwill of the Fidelity Companies, and assists the Fidelity Companies in complying with their legal, regulatory, and other obligations.

1. Confidential Information. To assist Employee in the performance of his/her duties, the Fidelity Companies agree to provide to Employee training and/or education regarding the Fidelity Companies' business methods, and agree to provide to Employee access to certain Confidential Information belonging to the Fidelity Companies. Confidential Information consists of all information pertaining to the business of any of the Fidelity Companies that is not generally known to the public at the time made known to Employee. It includes but is not limited to trade secrets; secret, confidential, and proprietary information; information protected by the attorney-client privilege; marketing, financial, research, trading, portfolio, and sales information; computer passwords and program designs; proprietary computer software designs and hardware configurations; proprietary technology; new product and service ideas; business, pricing, and marketing plans; customer, prospect, vendor, and personnel lists; financial and other personal information regarding customers and employees; confidential information about other companies and their products; and information expressly designated as "Fidelity Highly Confidential," "Fidelity Confidential," or "Fidelity Internal." All Confidential Information is imparted to Employee in a relationship of confidence. As a condition and in consideration of the Fidelity Companies' agreement to provide Employee with training and/or education and Confidential Information, Employee agrees that during his/her employment and thereafter, Employee will not copy, reproduce, use, disclose, or discuss in any manner, in whole or in part, any Confidential Information unless (1) necessary for Employee to carry out his/her job; (2) necessary for employees or other agents of the Fidelity Companies to carry out their duties and responsibilities; or (3) authorized in writing by the Fidelity Companies. Employee also will not retain any copies, notes, or excerpts of Confidential Information upon termination of his/her employment. Employee will promptly notify the Fidelity Companies of any inadvertent, unauthorized, or negligent copying, reproduction, use, disclosure, or discussion of Confidential Information. Employee will not open, read, or in any way access Confidential Information without authorization.

2. Systems Access. In order to carry out his/her responsibilities, Employee may be given access to various computer systems and passwords, user identifications, or other authenticating information ("password(s)"). Employee will not disclose his/her password(s) to anyone except in accordance with Fidelity policy. While incidental personal use of systems may occur, this is not the purpose of providing access; rather, all systems generally are to be used for legitimate Fidelity business purposes only, and all items created, accessed, or stored will be treated as Fidelity property for all purposes, including but not limited to monitoring, access, recording, review, and disclosure by Fidelity. Employee will adhere to all software licensing or other agreements applicable to systems and to Fidelity's expectations and policies regarding systems usage. Employee's authorization to access Fidelity systems shall expire when Employee leaves Fidelity's employ.

3. Company Property. Upon termination of Employee's employment, in the event Employee's employment no longer requires access to Confidential Information, or at any earlier time as requested by the Fidelity Companies, Employee will return all company property, including but not limited to his/her identification badge, company credit cards, company-owned equipment (such as cellular telephones, beepers, and laptop computers), and all documents and materials received from or created for or by any of the Fidelity Companies, including but not limited to Confidential Information.

4. Outside Business Activities. So long as Employee is employed by the Fidelity Companies, Employee will not engage in any other employment or business activities unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for outside activities may be withdrawn at any time.

5. Ethics and Outside Brokerage Accounts. So long as Employee is employed by the Fidelity Companies, Employee will adhere to the Code of Ethics for Personal Investing and the Statement of Policies and Procedures on Insider Trading and all other policies, procedures, or guidelines regarding Fidelity's standards for the proper conduct of business. If Employee is an employee of or associated with a registered broker-dealer or registered with the New York Stock Exchange or the Financial Industry Regulatory Authority, Employee will comply with industry agreements, standards, and regulations, and all special policies, compliance standards, and guidelines of the Fidelity Companies applicable to those in regulated businesses. Neither Employee nor Employee's spouse will maintain any brokerage account that either Employee or Employee's spouse owns or in which either Employee or Employee's spouse has a beneficial interest through any non-Fidelity broker-dealer unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for an outside account may be withdrawn at any time.

6. Non-solicitation. In consideration of the training and/or education and access to Confidential Information provided by the Fidelity Companies, and so as to enforce Employee's agreement regarding such Confidential Information, Employee agrees that during his/her employment and for a period of one year following his/her separation from employment by the Fidelity Companies, Employee will not use any Confidential Information belonging to the Fidelity Companies to directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer or prospective customer of the Fidelity Companies to divert or take away all or any portion of his/her/its business from the Fidelity Companies or otherwise cease the relationship with the Fidelity Companies. During this same period, Employee will not directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer or prospective customer with whom Employee had personal contact or about whom Employee otherwise learned during the course of Employee's employment with the Fidelity Companies.  Employee also will not, directly or indirectly, on his/her own behalf or on behalf of anyone or any company, hire, solicit in any manner, or induce or attempt to induce any employee of any of the Fidelity Companies to leave his/her employment.

7. Inventions and Use of Name or Likeness. Employee will disclose and Employee hereby assigns to Fidelity as Fidelity's exclusive property all ideas, writings, inventions, products, methods, techniques, discoveries, improvements, and technical or business innovations (the "Inventions") that Employee makes or conceives, whether or not patentable or copyrightable, either solely or jointly with others, during the period of his/her employment. All written or computer coded materials manifested in documents, systems design, disks, tapes, drawings, reports, specifications, data, memoranda, or otherwise (the "Materials") made or conceived during Employee's employment shall be considered works made for hire, and all right, title, and interest in the Materials shall be owned by the Fidelity Companies. To the extent that the Materials may be held not to be works made for hire, Employee hereby assigns the sole right, title, and interest in the Materials to the Fidelity Companies. In addition, Employee will execute all necessary paperwork and provide all other reasonable assistance requested by any of the Fidelity Companies, either during his/her employment or thereafter, to enable the Fidelity Companies to obtain, maintain, or enforce in itself or its nominees, patents, copyrights, trademarks, or other legal protection on the Inventions in any and all countries. These provisions with respect to Inventions and Materials apply only to Inventions and Materials which (i) are along the lines of the business or work of any of the Fidelity Companies; (ii) result from or are suggested by any work which Employee does for the Fidelity Companies; (iii) are made or conceived using equipment or other materials of the Fidelity Companies; or (iv) are made or conceived during regular hours of work. These provisions do not apply to any invention that qualifies fully under the terms of California Labor Code Section 2870. In addition, Employee hereby authorizes the Fidelity Companies to use, publish, and copyright all or part of his/her name, voice, picture, portrait, and likeness as the Fidelity Companies may decide in their sole discretion, in all media and types of advertising for any product or service or for any other lawful purpose, without review by Employee.

8. Agreements with Others. Employee represents and warrants that his/her employment by the Fidelity Companies will not require Employee to violate any agreement Employee may have with any employer or other business, and that Employee will not engage in any activities in violation of any such agreement. Without limiting the foregoing, Employee will not use or disclose to the Fidelity Companies any confidential information belonging to others. Employee further represents and warrants that Employee is not a party to any agreement, and Employee owes no duty to anyone, that limits or affects his/her ability to perform his/her duties for the Fidelity Companies. Employee has attached to this Agreement a list of all confidentiality, inventions, non-solicitation, non-compete, or other restrictive agreements to which Employee is or has been a party.

9. At Will Employment. Employee's employment by the Fidelity Companies is at will and may be terminated by Employee or by the Fidelity Companies at any time and for any reason, with or without cause or notice, during or after any applicable initial evaluation period.

10. Miscellaneous. This agreement will continue in full force and effect throughout Employee's tenure with any of the Fidelity Companies, regardless of any changes in Employee's responsibilities, the position Employee holds, or the particular Fidelity Company that employs Employee. Any agreement contrary to any of the provisions of this agreement or modifying this agreement in any way must be in writing and must be signed by the President or Human Resources Vice President of the Fidelity Company for which Employee works. Employee will disclose the existence and terms of this Agreement to any future employer of Employee. Employee's obligations under this Agreement shall survive the termination of Employee's employment with the Fidelity Companies. As to the provisions pertaining to Confidential Information, Employee's obligations shall continue until such time as the Confidential Information becomes known to the general public through no action on Employee's part. Any violation of this Agreement will cause irreparable damage to the Fidelity Companies or any of them. Therefore, the Fidelity Companies or any of them shall have the right to seek specific enforcement of this Agreement through equitable and injunctive relief, in addition to any other remedies available. This agreement will be for the benefit of the Fidelity Companies, its successors, and its assigns. The terms of this Agreement and any dispute out of it shall be governed by, and construed in accordance with, the laws of the state in which Employee currently is or, once Employee is no longer employed, was last, employed by Fidelity, without giving effect to such state's conflict of law principles. This Agreement is signed under seal.

**This agreement contains important information regarding the terms of Employee's employment with the Fidelity Companies. Employee and the Fidelity Companies hereby agree to adhere to it.**

\*

**Candidate eSignature**
\*\*\*\*\*\*

James

Buri

eSign Date
09/25/2015, 7:15:27 PM GMT

IP Address
50.183.46.50

*Tara N Amaral*

**Tara N. Amaral**

**SVP, Head of Talent Acquisition**

Updated 07/2014 Fidelity Highly Confidential Information

EXHIBIT H

Mandatory fields are marked with a red indicator.
**Employee Agreement**

# Employee Agreement

**James  Buri**            ("Employee") wishes to be employed by FMR LLC and/or any entity that is directly or indirectly, wholly or in part, owned or controlled by or under common control with FMR LLC (the "Fidelity Companies"). As a condition of employment, Employee and the Fidelity Companies agree to abide by this Agreement. This Agreement describes certain aspects of Employee's employment, protects Confidential Information and goodwill of the Fidelity Companies, and assists the Fidelity Companies in complying with their legal, regulatory, and other obligations.

1. Confidential Information. To assist Employee in the performance of his/her duties, the Fidelity Companies agree to provide to Employee training and/or education regarding the Fidelity Companies' business methods, and agree to provide to Employee access to certain Confidential Information belonging to the Fidelity Companies. Confidential Information consists of all information pertaining to the business of any of the Fidelity Companies that is not generally known to the public at the time made known to Employee. It includes but is not limited to trade secrets; secret, confidential, and proprietary information; information protected by the attorney-client privilege; marketing, financial, research, trading, portfolio, and sales information; computer passwords and program designs; proprietary computer software designs and hardware configurations; proprietary technology; new product and service ideas; business, pricing, and marketing plans; customer, prospect, vendor, and personnel lists; financial and other personal information regarding customers and employees; confidential information about other companies and their products; and information expressly designated as "Fidelity Highly Confidential," "Fidelity Confidential," or "Fidelity Internal." All Confidential Information is imparted to Employee in a relationship of confidence. As a condition and in consideration of the Fidelity Companies' agreement to provide Employee with training and/or education and Confidential Information, Employee agrees that during his/her employment and thereafter, Employee will not copy, reproduce, use, disclose, or discuss in any manner, in whole or in part, any Confidential Information unless (1) necessary for Employee to carry out his/her job; (2) necessary for employees or other agents of the Fidelity Companies to carry out their duties and responsibilities; or (3) authorized in writing by the Fidelity Companies. Employee also will not retain any copies, notes, or excerpts of Confidential Information upon termination of his/her employment. Employee will promptly notify the Fidelity Companies of any inadvertent, unauthorized, or negligent copying, reproduction, use, disclosure, or discussion of Confidential Information. Employee will not open, read, or in any way access Confidential Information without authorization. The foregoing requirements are subject to the limitations set forth in paragraph 10, below.

2. Systems Access. In order to carry out his/her responsibilities, Employee may be given access to various computer systems and passwords, user identifications, or other authenticating information ("password(s)"). Employee will not disclose his/her password(s) to anyone except in accordance with Fidelity policy. While incidental personal use of systems may occur, this is not the purpose of providing access; rather, all systems generally are to be used for legitimate Fidelity business purposes only, and all items created, accessed, or stored will be treated as Fidelity property for all purposes, including but not limited to monitoring, access, recording, review, and disclosure by Fidelity. Employee will adhere to all software licensing or other agreements applicable to systems and to Fidelity's expectations and policies regarding systems usage. Employee's authorization to access Fidelity systems shall expire when Employee leaves Fidelity's employ.

3. Company Property. Upon termination of Employee's employment, in the event Employee's employment no longer requires access to Confidential Information, or at any earlier time as requested by the Fidelity Companies, Employee will return all company property, including but not limited to his/her identification badge, company credit cards, company-owned equipment (such as cellular telephones, beepers, and laptop computers), and all documents and materials received from or created for or by any of the Fidelity Companies, including but not limited to Confidential Information.

4. Outside Business Activities. So long as Employee is employed by the Fidelity Companies, Employee will not engage in any other employment or business activities unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for outside activities may be withdrawn at any time.

5. Ethics and Outside Brokerage Accounts. So long as Employee is employed by the Fidelity Companies, Employee will adhere to the Code of Ethics for Personal Investing and the Statement of Policies and Procedures on Insider Trading and all other policies, procedures, or guidelines regarding Fidelity's standards for the proper conduct of business. If Employee is an employee of or associated with a registered broker-dealer or registered with the New York Stock Exchange or the Financial Industry Regulatory Authority, Employee will comply with industry agreements, standards, and regulations, and all special policies, compliance standards, and guidelines of the Fidelity Companies applicable to those in regulated businesses. Neither Employee nor Employee's spouse will maintain any brokerage account that either Employee or Employee's spouse owns or in which either Employee or Employee's spouse has a beneficial interest through any non-Fidelity broker-dealer unless Employee receives prior written approval from the Fidelity Companies in accordance with applicable policies and procedures.  Approval for an outside account may be withdrawn at any time.

6. Non-solicitation. In consideration of the training and/or education and access to Confidential Information provided by the Fidelity Companies, and so as to enforce Employee's agreement regarding such Confidential Information, Employee agrees that during his/her employment and for a period of one year following his/her separation from employment by the Fidelity Companies, Employee will not use any Confidential Information belonging to the Fidelity Companies to directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer or prospective customer of the Fidelity Companies to divert or take away all or any portion of his/her/its business from the Fidelity Companies or otherwise cease the relationship with the Fidelity Companies. During this same period, Employee will not directly or indirectly, on his/her own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer or prospective customer with whom Employee had personal contact or about whom Employee otherwise learned during the course of Employee's employment with the Fidelity Companies.  Employee also will not, directly or indirectly, on his/her own behalf or on behalf of anyone or any company, hire, solicit in any manner, or induce or attempt to induce any employee of any of the Fidelity Companies to leave his/her employment.

7. Inventions and Use of Name or Likeness. Employee will disclose and Employee hereby assigns to Fidelity as Fidelity's exclusive property all ideas, writings, inventions, products, methods, techniques, discoveries, improvements, and technical or business innovations (the "Inventions") that Employee makes or conceives, whether or not patentable or copyrightable, either solely or jointly with others, during the period of his/her employment. All written or computer coded materials manifested in documents, systems design, disks, tapes, drawings, reports, specifications, data, memoranda, or otherwise (the "Materials") made or conceived during Employee's employment shall be considered works made for hire, and all right, title, and interest in the Materials shall be owned by the Fidelity Companies. To the extent that the Materials may be held not to be works made for hire, Employee hereby assigns the sole right, title, and interest in the Materials to the Fidelity Companies. In addition, Employee will execute all necessary paperwork and provide all other reasonable assistance requested by any of the Fidelity Companies, either during his/her employment or thereafter, to enable the Fidelity Companies to obtain, maintain, or enforce in itself or its nominees, patents, copyrights, trademarks, or other legal protection on the Inventions in any and all countries. These provisions with respect to Inventions and Materials apply only to Inventions and Materials which (i) are along the lines of the business or work of any of the Fidelity Companies; (ii) result from or are suggested by any work which Employee does for the Fidelity Companies; (iii) are made or conceived using equipment or other materials of the Fidelity Companies; or (iv) are made or conceived during regular hours of work. These provisions do not apply to any invention that qualifies fully under the terms of California Labor Code Section 2870. In addition, Employee hereby authorizes the Fidelity Companies to use, publish, and copyright all or part of his/her name, voice, picture, portrait, and likeness as the Fidelity Companies may decide in their sole discretion, in all media and types of advertising for any product or service or for any other lawful purpose, without review by Employee.

8. Agreements with Others. Employee represents and warrants that his/her employment by the Fidelity Companies will not require Employee to violate any agreement Employee may have with any employer or other business, and that Employee will not engage in any activities in violation of any such agreement. Without limiting the foregoing, Employee will not use or disclose to the Fidelity Companies any confidential information belonging to others. Employee further represents and warrants that Employee is not a party to any agreement, and Employee owes no duty to anyone, that limits or affects his/her ability to perform his/her duties for the Fidelity Companies. Employee has attached to this Agreement a list of all confidentiality, inventions, non-solicitation, non-compete, or other restrictive agreements to which Employee is or has been a party.

9. At Will Employment. Employee's employment by the Fidelity Companies is at will and may be terminated by Employee or by the Fidelity Companies at any time and for any reason, with or without cause or notice, during or after any applicable initial evaluation period.

10. Communication with Government Entities: Nothing in this Agreement shall prohibit or restrict you  from (A) communicating directly with, cooperating with, providing or causing to be provided information to, or otherwise assisting in an investigation by the Securities and Exchange Commission, FINRA, the Equal Employment Opportunity Commission, the Department of Justice, or any other government or regulatory agency, entity, or official or self-regulatory organization (collectively, "Government Authority") regarding a possible violation of any law, rule, or regulation; or (B) responding to any inquiry or legal process directed to you individually (and not directed to the Company and/or its subsidiaries) from any such Government Authority, including an inquiry about the existence of this Agreement or its underlying facts or circumstances.  Nor does this Agreement require you to obtain prior authorization from the Company before engaging in any conduct described in this paragraph, or to notify the Company that you have engaged in any such conduct.  However, in connection with any such activity, you acknowledge that you will take reasonable precautions to ensure that confidential  information disclosed to any Government Authority is not made generally available to the public, including by informing the recipient of the confidential nature of the same.

11. Miscellaneous. This agreement will continue in full force and effect throughout Employee's tenure with any of the Fidelity Companies, regardless of any changes in Employee's responsibilities, the position Employee holds, or the particular Fidelity Company that employs Employee. Any agreement contrary to any of the provisions of this agreement or modifying this agreement in any way must be in writing and must be signed by the President or Human Resources Vice President of the Fidelity Company for which Employee works. Employee will disclose the existence and terms of this Agreement to any future employer of Employee. Employee's obligations under this Agreement shall survive the termination of Employee's employment with the Fidelity Companies. As to the provisions pertaining to Confidential Information, Employee's obligations shall continue until such time as the Confidential Information becomes known to the general public through no action on Employee's part. Any violation of this Agreement will cause irreparable damage to the Fidelity Companies or any of them. Therefore, the Fidelity Companies or any of them shall have the right to seek specific enforcement of this Agreement through equitable and injunctive relief, in addition to any other remedies available. This agreement will be for the benefit of the Fidelity Companies, its successors, and its assigns. The terms of this Agreement and any dispute out of it shall be governed by, and construed in accordance with, the laws of the state in which Employee currently is or, once Employee is no longer employed, was last, employed by Fidelity, without giving effect to such state's conflict of law principles. This Agreement is signed under seal.

**This agreement contains important information regarding the terms of Employee's employment with the Fidelity Companies. Employee and the Fidelity Companies hereby agree to adhere to it.**

✳

**Candidate eSignature**

\*\*\*\*\*\*

James

Buri

**eSign Date**

07/27/2016, 4:17:07 PM GMT

**IP Address**

192.223.242.21

**Tara N. Amaral**

**SVP, Head of Talent Acquisition**

Updated 07/2016 Fidelity Highly Confidential Information

EXHIBIT I

Wealth Management
28202 Cabot Road, Suite 500
Laguna Niguel, CA 92677
tel  949 365 1775
fax  949 365 5398
toll free  800 965 2576

# Morgan Stanley

December 5, 2018



Dear REDACTED,

I am extremely pleased to announce that I have joined Morgan Stanley, one of the leaders in the
financial services industry. After careful consideration, I have concluded that I can most effectively
assist you in meeting your investment goals and objectives through Morgan Stanley.

Morgan Stanley is committed to providing investors with the finest financial advice, products and
services. Working together we will be able to draw upon the firm's vast network of knowledgeable
professionals to help us map out your individual investment strategy. As a Morgan Stanley client
you will benefit from the resources and support of a global financial services firm.

My new office is located at 28202 Cabot Rd, Suite 500, Laguna Niguel, CA 92677

I can be reached at (949) 365-5307 or toll free at (800) 965-2576.

As always, I appreciate the confidence you have placed in me and look forward to furthering our
successful relationship.

Sincerely,

James Buri
Vice President
Financial Advisor

Morgan Stanley Smith Barney LLC. Member SIPC.

CRC 2337905  12/18

EXHIBIT J

## Faro, Meredith

| | |
|---|---|
| **From:** | REDACTED |
| **Sent:** | Thursday, December 13, 2018 9:52 PM |
| **To:** | JIMBURI.TEAM |
| **Cc:** | prnonsecureinboundpi@fmr.com |
| **Subject:** | contact from Jim Buri |

<MessageID> 00058aE14W0YG6SY </MessageID> <IncidentID> 00058aE14W0YG6SX </IncidentID> <Secured> No </Secured> <Customer Email Address> william@sietsema.com </Customer Email Address> <CustomerID> 0003KaBM5YP0ETGD </CustomerID> <Customer Name> William Sietsema </Customer Name> <ServiceRequestID> </ServiceRequestID> <AIE> 0 </AIE> <Mail_type_Desc> Agent Reply </Mail_type_Desc> <Last_Reply_Mailbox> </Last_Reply_Mailbox> <Root_Department_CD> </Root_Department_CD> <Account_Number> </Account_Number>

This email is from an external source - exercise caution regarding links and attachments.
Hi, I thought you might like to know that Jim Buri has mailed and phoned me from his new position at Morgan Stanley.

He must have taken his Fidelity client list/contact information when he left.

Best wishes,


-     REDACTED

EXHIBIT K

L█████ L██████ ~ Salesforce - Unlimited Edition



salesforce.com.

- Close Window
- Print This Page
- Expand All | Collapse All

L█████ L██████

## Contact Information

| | | | |
|---|---|---|---|
| Best Time to Contact | | Last Associate Contact | 12/14/2018 2:55 PM |
| Primary Phone | ████████ | Days Since Last Appointment | 18 |
| Secondary Phone | | Days Until Next Activity | -18 |
| Mailing Address | ████████ | Last Account Team Contact | 12/10/2018 9:03 PM |
| Primary Email | ██████████ | Days Since Last Account Team Contact | 7 |
| Frequency of Communication | | | |
| Communication Preference | | | |

## Customer Information

| | | | |
|---|---|---|---|
| Record Type | Customer | Account Owner | BURI, JAMES (Financial Consultant) |
| Name | L██ L██ | Executive Benefits Support Contact | |
| Preferred Name | | Stock Plan Executive Services Support | |
| Phonetic | | Ownership Start Date | 2/15/2018 9:20 PM |
| Gender | | Service Model | PCG |
| Date of Birth | ████ | Tier | Tier A |
| Age | ████ | Head of Household | ✓ |
| | | 12-4-2-2 Participant | ☐ |
| | | MID | ████████████ |
| | | Household | L████L██ |
| NPS Score Details | 9-Promoter | NPS Score Date | 08/21/2018 |

## Executive Services Information

| | | | |
|---|---|---|---|
| Executive Services Employer | | Executive Services Eligibility | |
| Executive Services Start Date | | Executive Services Support Type | |

L█████ L██████ ~ Salesforce - Unlimited Edition

**Employment Status**

**Executive Services Level**

Work Foreign Address Indicator    [ ]

## Employment Information

Occupation

## Portfolio Information

| | | | |
|---|---|---|---|
| PI Indicator | ✓ | PI Portfolio Value | $ ████████ |
| WI Indicator | ✓ | WI Portfolio Value | $ ███ |
| Relationship Type | Investment Advisor | Client Advice Enrollment Date | 7/16/2018 12:00 AM |
| Premium Services Indicator | [ ] | | |

## System Information

Created By    Migration User, 3/25/2017 5:52 AM          Last Modified By    STEVEN RAY, 12/14/2018 2:55 PM

## Account Team

**BILL CARTER**
Team Role  Regional Planning Consultant

**BILL HORMAN**
Team Role  Managed Account Rep

**GERARD KINZEL**
Team Role  Branch Office Manager

**JEANNA PEIRANO**
Team Role  Relationship Manager

**KELLI MARTIN**
Team Role  Relationship Manager

**KIMBERLY HAGGARD**
Team Role  Relationship Manager

**MITCH HATTON**
Team Role  Relationship Manager

**ROBERT KOCH**
Team Role  Branch Office Manager

**STEPHEN JENNINGS**
Team Role  Branch Office Manager

L███ L███ ~ Salesforce - Unlimited Edition



**Spoke w/ L███, potential WAS?**

| | |
|---|---|
| Last Modified Date/Time | **12/5/2018 3:21 PM** |
| Task/Event Record Type | **PI Activity** |
| Type | **Phone Call Out** |
| Assigned To | **GERARD KINZEL** |
| Due Date* | **12/5/2018 3:21 PM** |
| Comments | **Spoke w/ L███, in W. Virginia today. He confirmed that he received a call from Jim after his move to Morgan Stanley and he was invited to continue working w/ Jim going forward. I suggested that he also meet with FC Ryan Gregory. He travels b/t HB and Irv** |
| Status | **Completed** |
| Notes | **Spoke w/ L███, in W. Virginia today. He confirmed that he received a call from Jim after his move to Morgan Stanley and he was invited to continue working w/ Jim going forward. I suggested that he also meet with FC Ryan Gregory. He travels b/t HB and Irvine frequently, said NB location is convenient. He is not happy with his PAS account, may be a better fit for WAS. He is also considering moving accounts to Schwab due to PAS performance. Said he is unlikely to follow Jim. He would like to hear from Ryan on Monday.** |

salesforce.com.

• **Close Window**
• **Print This Page**
• **Expand All | Collapse All**

W█████ S████████ 

---

## Contact Information

| | | | |
|---|---|---|---|
| Best Time to Contact | Evening | Last Associate Contact | 12/14/2018 7:20 PM |
| Primary Phone | ███████ | Days Since Last Appointment | 535 |
| Secondary Phone | | Days Until Next Activity | -14 |
| Mailing Address | ███████ | Last Account Team Contact | 6/30/2017 2:00 AM |
| Primary Email | ███████ | Days Since Last Account Team Contact | 535 |
| Frequency of Communication | | | |
| Communication Preference | | | |

## Customer Information

| | | | |
|---|---|---|---|
| Record Type | Customer | Account Owner | BURI, JAMES (Financial Consultant) |
| Name | W████ S████ | Executive Benefits Support Contact | |
| Preferred Name | | Stock Plan Executive Services Support | |
| Phonetic | ███████ | Ownership Start Date | 7/27/2016 2:00 AM |
| Gender | | Service Model | PCG 1:1 FI |
| Date of Birth | ███████ | Tier | Tier B |
| Age | ███████ | Head of Household | ✓ |
| | | 12-4-2-2 Participant | ✓ |
| | | MID | ███████ |
| | | Household | S███████, W████ |
| NPS Score Details | **9-Promoter** | NPS Score Date | 11/01/2018 |

## Executive Services Information

| | | | |
|---|---|---|---|
| Executive Services Employer | | Executive Services Eligibility | |

W███ S████████ ~ Salesforce - Unlimited Edition

| | | | |
|---|---|---|---|
| Executive Services Start Date | | Executive Services Support Type | |
| Employment Status | | Executive Services Level | |
| Work Foreign Address Indicator | | | |

## Employment Information

Occupation

## Portfolio Information

| | | | |
|---|---|---|---|
| PI Indicator | ✓ | PI Portfolio Value | $████████ |
| WI Indicator | ✓ | WI Portfolio Value | $████████ |
| Relationship Type | Customer Relationship Detail Unavailable | Client Advice Enrollment Date | Customer Relationship Detail Unavailable |
| Premium Services Indicator | | | |

## System Information

| | | | |
|---|---|---|---|
| Created By | Migration User, 3/25/2017 5:56 AM | Last Modified By | GERARD KINZEL, 12/14/2018 7:20 PM |

## Account Team
**MITCH HATTON**

Team Role  Relationship Manager



## Activity History
**Client provided letter from Jim**

| | |
|---|---|
| Last Modified Date/Time | **12/14/2018 7:20 PM** |
| Task/Event Record Type | **PI Activity** |
| Type | **Phone Call Out** |
| Assigned To | **GERARD KINZEL** |
| Due Date* | **12/14/2018 7:20 PM** |

W█████ S███████ ~ Salesforce - Unlimited Edition                    Page 3 of 9

Comments  Client received a letter and phone call from Jim, concerned about having PII stolen by
          former FC. I apologized for the poor experience and awarded him 100 free trades for 2
          years in trust account. The trust is eligible to receive them. I also asked him to

Status    Completed

          Client received a letter and phone call from Jim, concerned about having PII stolen by
          former FC. I apologized for the poor experience and awarded him 100 free trades for 2
Notes     years in trust account. The trust is eligible to receive them. I also asked him to email the
          letter to us and he obliged. We will reassign to new FC soon.

## Emails Exch

Last Modified Date/Time  12/14/2018 5:32 PM
Task/Event Record Type   PI Activity
Type                     Substantial 2-way Email
Assigned To              STEVEN RAY
Due Date*                12/14/2018 5:32 PM

                         Hi B█,

                         This is Steve Ray. Gerard asked that I extend his thanks for sending this over. I've
                         forwarded him the letter - we appreciate all your help. He also asked that I let you know
Comments                 that he is entering your free trades now.

                         Have a great weekend,

                         On 1

Status                   Completed

                         Hi B█,

                         This is Steve Ray. Gerard asked that I extend his thanks for sending this over. I've
                         forwarded him the letter - we appreciate all your help. He also asked that I let you know
                         that he is entering your free trades now.

                         Have a great weekend,

Notes                    On 12/14/2018 1:56 PM, B█ S███████ wrote:
                         As requested.

                         Thanks for the call.

                         Best wishes,

                         • B█

## Emails Exch

Last Modified Date/Time  12/13/2018 9:38 PM
Task/Event Record Type   PI Activity
Type                     Substantial 2-way Email
Assigned To              STEVEN RAY
Due Date*                12/13/2018 9:38 PM

                         Good evening B█,

                         You may have already received a voice message from me tonight, but I wanted to follow-
Comments                 up via email as well. My name is Steve Ray, Relationship Manager in our Newport Beach
                         office.

                         Thank you so much for taking the time to notify us tha

Status                   Completed

Notes                    Good evening B█,

                         You may have already received a voice message from me tonight, but I wanted to follow-

W█████ S█████  ~ Salesforce - Unlimited Edition

up via email as well. My name is Steve Ray, Relationship Manager in our Newport Beach office.

Thank you so much for taking the time to notify us that Jim has contacted you. The purpose for my call was to offer my apologies for any inconvenience it's caused, and assure you that we are working to introduce Jim's former clients to a new Financial Consultant.

In the interim, I want to ensure a seamless transition for all affected - if you have any needs, please don't hesitate to reach me directly and I am happy to assist. My direct number is (949) 629-9950 x75621, and I can still also be reached via this email address.

Have a great evening, B█ - thank you again for reaching out!

Best,

Steven Ray

On 12/13/2018 4:59 PM, W████ S██████ wrote:
Hi, I thought you might like to know that Jim Buri has mailed and phoned me from his new position at Morgan Stanley.

He must have taken his Fidelity client list/contact information when he left.

Best wishes,

-     B█ S█████

---

**SCR VM**

| | |
|---|---|
| Last Modified Date/Time | 12/13/2018 9:37 PM |
| Task/Event Record Type | PI Activity |
| Type | Attempt: Left Message |
| Assigned To | STEVEN RAY |
| Due Date* | 12/13/2018 9:37 PM |
| Comments | LVM to thank him for letting us know he's been contacted by Jim / apologies for any inconvenience |
| Status | Completed |
| Notes | LVM to thank him for letting us know he's been contacted by Jim / apologies for any inconvenience |

