SARINA SALUJA, SBN 253781
E-Mail ssaluja@fisherphillips.com
FISHER & PHILLIPS LLP
444 South Flower Street, Suite 1500
Los Angeles, California 90071
Telephone: (213) 330-4500
Facsimile: (213) 330-4501

Attorneys for Plaintiff Fidelity Brokerage Services LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| FIDELITY BROKERAGE SERVICES LLC,<br><br>Plaintiff,<br><br>v.<br><br>JAMES BURI and MORGAN STANLEY SMITH BARNEY LLC,<br><br>Defendants. | Case No: 8:18-cv-02246-JVS-ADS<br><br>**AFFIDAVIT OF STEPHEN JENNINGS**<br><br>*[Submitted with Notice and Application of TRO, Memorandum of Points and Authorities, Declarations Gerard Kinzel and Sarina Saluja, and [Proposed] Order]*<br><br>Complaint Filed: December 19, 2018<br>Trial: Not Set |

I, Stephen Jennings, solemnly affirm as follows:

1.     I am over the age of 18. All statements in this Affidavit are based on my personal knowledge, or, where indicated, based on my investigation. I submit this Affidavit on behalf of Plaintiff Fidelity Brokerage Services LLC ("Fidelity") in support of its Motion for a Temporary Restraining Order and Preliminary Injunction.

2.     I am currently employed as a Market Leader for Fidelity with supervisory responsibility for offices in Newport Beach, Mission Viejo, San Diego, Irvine, and Palm Desert. I am also the Branch Office Manager for the Irvine and Newport Beach Investor Centers. I have been employed with Fidelity in various capacities for approximately 19 years.

3.     Until his recent resignation to join Morgan Stanley Smith Barney LLC ("Morgan Stanley"), a directly competitive firm, Defendant James Buri ("Buri") worked as a Vice President,

---

AFFIDAVIT OF STEPHEN JENNINGS

Financial Consultant in Fidelity's Newport Beach, California Branch Office.  In my capacity as Market Leader, I oversee the Newport Beach Investor Center where Buri worked.

4.      Fidelity and its affiliates provide a variety of financial services - such as retirement services, investment planning, wealth management, securities execution and clearing, life insurance services, and equity services - to Fidelity customers, with whom Fidelity typically enjoys significant, long-term relationships.  Fidelity offers individual investors a broad assortment of trading and cash management features including buying and selling stocks, bonds, options and thousands of mutual funds from Fidelity and other well-known fund companies.

5.      Fidelity is unique in the retail brokerage field because Fidelity does not have its Account Executives, including its Financial Consultants, make "cold calls" to persons who have no relationship with Fidelity, or who were not referred to Fidelity.  Fidelity requires its Financial Consultants to develop service relationships based upon leads that Fidelity provides.

6.      Fidelity provides leads to its Financial Consultants from two primary sources.  First, Fidelity forwards information to its representatives from prospective customers who initiate contact with Fidelity either by telephone, over the internet, or in person.  Fidelity and its affiliates devote tens of millions of dollars per year toward attracting customers to Fidelity's various businesses in a variety of means.  Fidelity arranges to publish and broadcast national and local advertisements which invite potential customers to contact Fidelity; Fidelity maintains an interactive internet page that allows interested persons to establish relationships with Fidelity; Fidelity maintains multiple call centers that prospective customers can use to initiate contact with Fidelity; and, Fidelity maintains prominent retail locations that prospective customers can visit.  A large portion of Fidelity's business is derived from this initial customer contact that is generated by significant investments of time, labor, and capital by Fidelity.

7.     Second, Fidelity forwards information to its representatives regarding customers, with whom Financial Consultants such as Buri are the face of Fidelity, responsible for developing and sustaining the customer relationships for assigned customers.  Fidelity's lead-based approach to supporting its Financial Consultants distinguishes Fidelity from other full-service brokerages where individual brokers, rather than the firm, are responsible for establishing customer relationships. Fidelity's success in its lead-based approach is based on the typically long-standing relationships it enjoys with its customers.

8.     As Fidelity already has a relationship with customers, when they experience "triggering events," such as Fidelity 401(k) distributable events, this often leads to interest in Fidelity's retail financial services.  In addition, representatives may be assigned to service customers previously serviced by other representatives in certain circumstances, such as if the former representative moves, leaves Fidelity, or is promoted to another position.  A significant portion of Fidelity's business is derived from servicing the needs of Fidelity's existing customers.

9.     Fidelity's success with its unique lead-based approach to supporting Financial Consultants such as Buri is directly tied to Fidelity's trade secret customer information, which is among Fidelity's most important assets.  Fidelity's trade secret customer data includes the names of and contact information for Fidelity customers, and includes financial information relating to those customers, such as customer financial statements, investment goals, investment history, assets, income, and net worth.  Although certain information might be publicly available—such as an individual's name or published home telephone numbers—only a limited number of Fidelity employees know who among the general public are Fidelity customers, and therefore have a specific need for investment services.  It is only by servicing these individuals on behalf of Fidelity that Buri was able to learn that these customers have significant investable assets and were interested in investment services.

---

AFFIDAVIT OF STEPHEN JENNINGS

10.     Fidelity maintains its customer data in confidence, both to preserve Fidelity's competitive advantage in its customer base and to meet customer expectations that Fidelity will maintain sensitive, personally identifiable information (including their identity as a customer, contact information and financial information) in confidence. Fidelity derives substantial economic value from preserving its customer data as a trade secret. Although individual customers are periodically subject to random solicitations from Fidelity competitors, no competitor can effectively target a set of Fidelity customers and address their needs without access to Fidelity's trade secret customer data. In this way, maintaining the confidentiality of Fidelity's trade secret customer data provides Fidelity with a significant competitive advantage over its competitors.

11.     Fidelity additionally preserves trade secret customer data by requiring Financial Consultants to execute a standard Fidelity Employee Agreement, in which they agree not to use or disclose Fidelity's confidential information, including customer information, outside of Fidelity. Buri executed multiple versions of Fidelity's Employee Agreement.

12.     Fidelity vigilantly preserves its trade secret customer data so that it does not become available to competitors who could use the data to divert customers, without the investment of time, labor, and capital that Fidelity made to compile the information. Fidelity does not provide its trade secret customer data to competitors. Fidelity maintains its trade secret customer data on password-protected computers, and only employees whose jobs require access to the customer data are provided with such access. In addition to having Financial Consultants sign Employee Agreements, Fidelity maintains a Global Policy on Information Protection and educates its employees on the policy. Further, Fidelity employees are not permitted to take, use, or disclose any customer information when they leave Fidelity.

13.     It is my understanding that certain financial institutions have agreed to a "Protocol for Broker Recruiting," frequently referred to as the "Protocol." The Protocol is an agreement governing

---

AFFIDAVIT OF STEPHEN JENNINGS

the movement of registered representatives among those institutions.  The Protocol is a forbearance agreement in which signatories agree that registered representatives moving from one signatory firm to another signatory firm may take certain customer information and solicit customers provided they follow the requirements set forth in the Protocol.  The Protocol, by its own terms, applies only to financial firms who are signatories to the agreement.  Fidelity is not, and has never been, a signatory to the Protocol.  To the contrary, Fidelity vigilantly protects its confidential customer information and prohibits its representatives from taking any such information when they resign from Fidelity.  A true and accurate copy of the Protocol, obtained from the website of Capital Forensics, the firm which maintains and stores the Protocol, is attached hereto as Exhibit A.

14.    After Buri resigned, Fidelity learned that Buri may have been soliciting Fidelity customers to transfer their business to Morgan Stanley.  In response, Fidelity's in-house counsel sent a letter to Buri's counsel dated December 6, 2018, outlining Buri's legal obligations to Fidelity, reminding Buri that he was required to return any confidential information to Fidelity, that he was prohibited from using or disclosing any confidential information belonging to Fidelity, and that he was prohibited from using Fidelity's trade secret information to solicit its customers.  The letter further attached a copy of Buri's Employee Agreement.  A copy of this December 6, 2018 letter to Buri's counsel is attached hereto as Exhibit B.

15.    Buri's counsel responded to Fidelity's cease and desist letter denying that Buri had taken physical copies of Fidelity's customer information but stating that Buri was not limited to just announcing his new employment to customers but was allowed to "immediately compete with Fidelity" based on a recent case decision.  A copy of Buri's counsel's December 14, 2018 letter is attached hereto as Exhibit C.

16.    I understand that Buri has, in fact, been directly competing with Fidelity and using Fidelity's trade secret customer information to aggressively solicit customers to transfer their accounts

---

AFFIDAVIT OF STEPHEN JENNINGS

to Morgan Stanley.  Fidelity is harmed, both monetarily and irreparably, by the actual and threatened loss of customers and customer goodwill caused by Buri's misuse of Fidelity's customer information and his solicitation of Fidelity customers on behalf of Morgan Stanley.

17.     Further, Fidelity customers have an expectation that their confidential contact and financial information will be protected and not taken or used by departing employees.  Indeed, unlike some other brokerage companies, Fidelity does not obtain from its customers the right to use or disclose their information outside of Fidelity.  The damage to Fidelity's customer relationships caused by Defendants' conduct is therefore incalculable as Fidelity cannot put a price on the value of its customer relationships or the damage caused when Defendants improperly misused Fidelity's confidential customer information to divert its business to a competitor.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Stephen Jennings

Subscribed and sworn to
Before me this ____ day of December, 2018

- SEE ATTACHMENT. -

_____
Notary Public
My Commission Expires: _____

**CALIFORNIA JURAT WITH AFFIANT STATEMENT**          GOVERNMENT CODE § 8202

☒ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–6 to be completed only by document signer[s], not Notary)

1.
2.
3.
4.
5.
6.

_____          _____
  *Signature of Document Signer No. 1*          *Signature of Document Signer No. 2 (if any)*

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of ___ORANGE___

Subscribed and sworn to (or affirmed) before me

on this __18ᵀᴴ__ day of __DECEMBER__, 20 _18_,
by            *Date*            *Month*          *Year*

(1) _____ STEPHEN JENNINGS _____

(and (2) _____ ),
                     *Name(s) of Signer(s)*

proved to me on the basis of satisfactory evidence to
be the person(s) who appeared before me.

Signature _____
                     *Signature of Notary Public*

GUILLERMO ENRIQUE BARRIGA
Notary Public - California
Orange County
Commission # 2166841
My Comm. Expires Oct 6, 2020

*Place Notary Seal and/or Stamp Above*

—————————— OPTIONAL ——————————

*Completing this information can deter alteration of the document or
fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: ___AFFIDAVIT OF STEPHEN JENNING___

Document Date: ___DECEMBER 18, 2018___ Number of Pages: ___6___

Signer(s) Other Than Named Above: _____

©2017 National Notary Association

M1304-08 (09/17)